| | |
|---|---|
| Debtor 1 | Richard John Rivera, Jr. |
| Debtor 2 : (Spouse, if filing) | Julie Gonzales-Rivera |
| United States Bankruptcy Court for the: | Northern District of: California |
| Case number: | 18-50604 |

Official Form 410

## Proof of Claim

4/16

Read the instructions before filling out this form. Use this form to make a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1: Identify the Claim

**1. Who is the current creditor?**

JPMorgan Chase Bank, National Association
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

[X] No.

[ ] Yes. From Whom?

**3. Where should notices and payments to the Creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Chase Records Center
Name

Attn: Correspondence Mail
Mail Code LA4-5555

| Number | Street | |
|---|---|---|
| 700 Kansas Lane | | |
| City | State | Zip Code |
| Monroe | LA | 71203 |

Contact phone 1-866-243-5851
Contact email

Where should payments to the creditor be sent? (if different)

JPMorgan Chase Bank, N.A.
Name

Mail Code: OH4-7142

| Number | Street | |
|---|---|---|
| 3415 Vision Drive | | |
| City | State | Zip Code |
| Columbus | OH | 43219 |

Contact phone 1-866-243-5851
Contact email

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

[X] No.

[ ] Yes. Claim number on court claims registry (if known) _____ Filed On _____ mm / dd / yy

**5. Do you know if anyone else has filed a proof of claim for this claim?**

[X] No.

[ ] Yes. Who made the earlier filing? _____

| Part 2 | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6.** Do you have any number you use to identify the debtor?

☐ No.

☒ Yes.    Last 4 digits of the debtor's account or any number you use to identify the debtor    **1285**

**7.** How much is the claim?   $   **427,223.00**

Does this amount include interest or other charges?

☐ No.

☒ Yes. Attach statement itemizing interest, fees, expenses, or other Charges required by Bankruptcy Rule 3001(C)(2)(A)

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as healthcare information.

**Money Loaned**

**9.** Is all or part of the claim secured?

☐ No.

☒ Yes.    The claim is secured by a lien on property.
Nature of property

   ☒ Real estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.

   ☐ Motor vehicle

   ☐ Other. Describe: _____

   Basis for perfection:    **Recorded Security Instrument**
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

   Value of Property:    $ _____

   Amount of the claim that is secured:    $ **427,223.00**

   Amount of the claim that is unsecured:    $ _____   (The sum of secured and unsecured amounts should match the amount in line 7.)

   Amount necessary to cure any default as of the date of the petition:    $   **16,390.34**

   Amount Interest Rate (When case was filed):    **3.37500%**
   ☒ Fixed

   ☐ Variable

**10.** Is this claim based on a lease?

☒ No.

☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____

**11.** Is this claim subject to a right of setoff?

☒ No.

☐ Yes. Identify the property: _____

Official Form 410       Proof of Claim       page 2

| | | | | |
|---|---|---|---|---|
| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☒ No | | |
| | | ☐ Yes. *Check all that apply:* | | |
| | A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | | | **Amount entitled to priority** |

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.    $ _____

\*    Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:    Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorized courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    <u>5/25/2018</u>
                    MM / DD / YYYY

<u>/s/ Bryan S. Fairman</u>
    Signature

Print the name of the person who is completing and signing this claim:

| | | | |
|---|---|---|---|
| Name | Bryan S Fairman | | |
| | First Name | Middle Name | Last Name |
| Title | Attorney | | |
| Company | Aldridge Pite, LLP | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 4375 Jutland Drive, Suite 200 | | |
| | Number    Street | | |
| | San Diego, CA. 92117 | | |
| | City | State | ZIP Code |
| Contact phone | 858-750-7600 | Email | bfairman@aldridgepite.com |

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

## Part 1: Mortgage and Case Information

Case number: 18-50604
Debtor 1: Richard John Rivera, Jr.
Debtor 2: Julie Gonzalez-Rivera
Last 4 digits to identify: 1265
Creditor: JPMorgan Chase Bank, National Association
Servicer: JPMorgan Chase Bank, N.A.
Fixed annuity/variable: Fixed
simple interest/adjustable:

Case Number: 18-50604
Debtor 1: Richard John Rivera, Jr.

## Part 2: Total Debt Calculation

| | |
|---|---|
| Principal balance: | $415,954.66 |
| Deferred balance: | $0.00 |
| Interest due: | $8,895.81 |
| Fees, costs due: | $101.88 |
| Escrow deficiency for funds advanced: | $1,800.46 |
| Less total funds on hand: | $0.00 |
| Total debt: | $427,223.00 |

## Part 3: Arrearage as of Date of the Petition

| | |
|---|---|
| Principal & interest due: | |
| Prepetition fees due: | |
| Escrow deficiency for funds advanced: | |
| Projected escrow shortage: | |
| Less funds on hand: | |
| Postpetition payments included in arrearage: | |
| Amount Waived Post-petition: | |
| Amount per Court Order: | |
| Total prepetition arrearage: | $16,380.34 |

## Part 4: Monthly Mortgage Payment

| | |
|---|---|
| Principal & interest: | $1,616.86 |
| Monthly escrow: | $416.66 |
| Private mortgage insurance: | |
| Total monthly payment: | $2,035.52 |

$1,616.86
$416.66
$2,035.52

## Part 5: Loan Payment History from First Date of Default

| Date | Contractual Payment Amount | Funds Received | Amount Incurred | Description | Contractual Due Date | How Funds Were Applied/Amount Incurred Principal, int & fees paid | Amount to interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Amount Arrearage | Principal balance | Accrued Interest balance | Escrow balance | Fees / Charges balance | Unapplied funds balance |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/01/2016 | $2,045.66 | | | PAYMENT DUE | | $0.00 | | | | | | $423,125.34 | | | $0.00 | $0.00 |
| 06/11/2016 | | $2,045.66 | | PAYMENT APPLIED | 06/01/2016 | $428.82 | $1,190.04 | $426.80 | | | | $423,125.34 | | $1,876.02 | $0.00 | $0.00 |
| 07/01/2016 | $2,055.13 | | | PAYMENT DUE | | $0.00 | | | | | | $422,096.52 | | $1,449.22 | $0.00 | $0.00 |
| 07/18/2016 | | | $80.94 | LATE CHARGE- ASSESSED | | | | | | | | $422,096.52 | | $1,449.22 | $80.94 | $0.00 |
| 08/01/2016 | $1,618.86 | | | PAYMENT DUE | | | | | | | | $422,096.52 | | $1,449.22 | $80.94 | $0.00 |
| 08/11/2016 | | $2,000.00 | | PAYMENT APPLIED | 07/01/2016 | $430.03 | $1,188.83 | $433.27 | | $80.87 | | $422,299.49 | | $1,015.95 | $80.87 | $0.00 |
| 09/01/2016 | $1,618.86 | | | PAYMENT DUE | | | | | | | | $422,299.49 | | $1,015.95 | $80.87 | $0.00 |
| 09/17/2016 | $80.94 | | | LATE CHARGE- ASSESSED | | | | | | | | $422,299.49 | | $1,015.95 | $161.88 | $0.00 |
| 10/01/2016 | $1,618.86 | | | PAYMENT DUE | | | | | | | | $422,299.49 | | $1,012.95 | $161.88 | $0.00 |
| 10/11/2016 | $2,200.85 | | | PAYMENT APPLIED | 08/01/2016 | $431.24 | $1,187.62 | $0.02 | $(669.46) | | | $420,899.14 | | $1,012.95 | $161.88 | $0.00 |
| 11/01/2016 | | | | PAYMENT DUE | | | | | | | | $421,835.25 | | $1,013.37 | $161.88 | $0.00 |
| 11/11/2016 | $2,200.85 | | | PAYMENT APPLIED | 09/01/2016 | | | | | | | $421,835.25 | | $1,013.39 | $161.88 | $0.00 |
| 11/21/2016 | | | | COUNTY TAX | | | | | | | | $421,835.25 | | $1,572.30 | $161.88 | $0.00 |
| 12/01/2016 | $2,200.85 | | | PAYMENT DUE | | $432.45 | $1,185.41 | $0.02 | | | | $421,450.80 | | $1,457.30 | $161.88 | $0.00 |
| 12/21/2016 | | | | PAYMENT- INTEREST ON ESCROW DEPOSIT | 09/01/2016 | | | $3.21 | | | | $421,450.80 | | $1,888.18 | $161.88 | $0.00 |
| 01/01/2017 | $2,200.85 | | | PAYMENT DUE | | | | | | | | $421,450.80 | | $1,888.16 | $161.88 | $604.51 |
| 01/11/2017 | $2,200.85 | | | PAYMENT APPLIED | 10/01/2016 | $433.68 | $1,185.20 | $0.02 | $401.97 | | | $420,989.14 | | $1,889.14 | $161.88 | $1,206.78 |
| 02/01/2017 | | | | PAYMENT DUE | | | | | | | | $420,989.14 | | $1,888.15 | $161.88 | $1,206.78 |
| 02/11/2017 | $2,200.85 | | | PAYMENT APPLIED | 11/01/2016 | $434.98 | $1,183.96 | $401.99 | | | | $420,534.26 | | $1,467.15 | $161.88 | $1,206.78 |
| 03/01/2017 | | | | COUNTY TAX | | | | | | | | $420,534.26 | | $1,065.16 | $161.88 | $1,206.78 |
| 03/11/2017 | $2,200.85 | | | PAYMENT DUE | | $436.11 | $1,182.75 | $401.99 | | | | $420,534.26 | | $1,065.15 | $161.88 | $1,206.78 |
| 04/01/2017 | $2,700.85 | | | PAYMENT APPLIED | 12/01/2016 | | | $(669.46) | | | | $420,008.15 | | $1,024.60 | $161.88 | $1,206.78 |
| 04/04/2017 | $2,200.85 | | | PAYMENT DUE | 01/01/2017 | $437.33 | $1,181.53 | $(2,186.00) | | | | $419,660.82 | | $1,622.03 | $161.88 | $1,206.78 |
| 04/14/2017 | | | | FLOOD INSURANCE | | | | | | | | $419,660.82 | | $(600.83) | $161.88 | $1,206.78 |
| 05/01/2017 | $2,700.85 | | | PAYMENT DUE | 02/01/2017 | $438.56 | $1,180.30 | $0.02 | | | | $419,222.26 | | $0.234.64 | $161.88 | $1,206.78 |
| 05/09/2017 | | | | PAYMENT APPLIED | | | | $(1,121.00) | | | | $419,222.26 | | $4,379.64 | $161.88 | $1,206.78 |
| 06/01/2017 | $2,100.00 | | | PAYMENT TO SUSPENSE | | | | | | $2,000.00 | | $419,222.26 | | $4,379.64 | $161.88 | $225.78 |
| 06/01/2017 | | | | PAYMENT DUE | 03/01/2017 | $439.80 | $1,179.06 | $401.99 | | $(2,000.55) | | $418,782.46 | | $3,977.65 | $161.88 | $1,205.63 |
| 06/29/2017 | | $2,021.00 | | PAYMENT APPLIED | 04/01/2017 | $441.03 | $1,177.83 | $401.99 | | $0.15 | | $418,341.43 | | $3,575.66 | $161.88 | $1,206.06 |
| 06/29/2017 | | | | PAYMENT DUE | | | | | | | | $418,341.43 | | $3,575.66 | $161.88 | $1,206.06 |
| 07/01/2017 | $2,200.85 | | | PAYMENT DUE | | | | | | | | $418,341.43 | | $3,575.66 | $161.88 | $1,205.88 |
| 08/01/2017 | $2,200.85 | | | PAYMENT TO SUSPENSE | | | | | | $2,000.00 | | $418,341.43 | | $3,575.66 | $161.88 | $228.08 |
| 08/01/2017 | | $2,000.00 | | PAYMENT APPLIED | 05/01/2017 | $440.27 | $1,178.59 | $401.99 | | $(2,000.05) | | $417,896.16 | | $3,173.67 | $161.88 | $1,205.23 |
| 08/01/2017 | $1,618.86 | | | PAYMENT DUE | | | | | | | | $417,896.16 | | $3,173.67 | $161.88 | $1,205.23 |
| 09/01/2017 | $2,021.00 | | | PAYMENT APPLIED | 06/01/2017 | $443.52 | $1,175.34 | $401.99 | | $0.15 | | $417,455.64 | | $2,771.68 | $161.88 | $1,205.38 |
| 09/01/2017 | $1,618.86 | | | PAYMENT DUE | | | | | | | | $417,455.64 | | $2,771.68 | $161.88 | $1,205.38 |
| 10/01/2017 | | | | COUNTY TAX | 07/01/2017 | $444.77 | $1,174.09 | $401.99 | | | | $417,010.97 | | $2,369.69 | $161.88 | $1,205.53 |
| 10/01/2017 | $1,618.86 | | | PAYMENT APPLIED | | | | | | | | $417,010.97 | | $2,369.69 | $161.88 | $1,205.53 |
| 10/03/2017 | $2,653.00 | | | PAYMENT DUE | 08/01/2017 | $446.02 | $1,172.84 | $401.99 | | $32.15 | | $416,564.85 | | $1,967.70 | $161.88 | $1,237.68 |
| 11/01/2017 | | | | PAYMENT APPLIED | | | | $(870.44) | | | | $416,564.85 | | $2,838.14 | $161.88 | $1,237.68 |
| 11/27/2017 | $1,618.86 | | | COUNTY TAX | | | | | | | | $416,564.85 | | $2,838.14 | $161.88 | $1,237.68 |
| 12/01/2017 | $1,618.86 | | | PAYMENT DUE | | | | | | | | $416,564.85 | | $2,838.14 | $161.88 | $1,237.68 |
| 12/01/2018 | $1,618.86 | | | PAYMENT DUE | | | | | | | | $416,564.85 | | $2,838.14 | $161.88 | $1,237.68 |
| 02/01/2018 | $1,618.86 | | | PAYMENT DUE | | | | | | | | $416,564.85 | | $2,838.14 | $161.88 | $1,237.68 |

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

# Mortgage Proof of Claim Attachment: Additional Page

|  |  | PAYMENT APPLIED |  |  |  |  |  |  |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
|  |  | PAYMENT DUE |  |  |  |  |  |  |
|  |  | BK FILED DATE |  |  |  |  |  |  |
| 02/26/2016 | $1,618.88 | $9,713.28 | $1,237.88 | ($1,237.66) | $416,664.85 | $(1,600.46) | $161.88 | $0.00 |
| 03/01/2018 |  | $11,333.16 |  | $416,664.85 |  | $(1,600.46) | $161.88 | $0.00 |
| 03/29/2018 |  | $11,333.16 |  | $415,566.85 |  | $(1,600.46) | $161.88 | $0.00 |

Servicer Loan #: 1265
Borrower Name: Richard John Rivera, Jr.
BK Case Number: 18-50604

Interest Rate: 3.375%
1st Principal Balance: $416,564.85
Escrow Balance: $(1,600.46)
Suspense Balance: $0.00

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

| Transaction Description | Transaction Code | Transaction Date | Ins/Premium Disb Due Date | Escrow Amount | Escrow Disbursement | Escrow Balance |
|---|---|---|---|---|---|---|
| Payment Application | 172 | 03/06/2017 | 03/06/2017 | $401.99 | | $(1,065.16) |
| Disb. for COUNTY TAX | 312 | 03/21/2017 | 03/21/2017 | | $(859.46) | $(1,924.62) |
| Payment Application | 172 | 04/04/2017 | 04/04/2017 | $401.99 | | $(1,522.63) |
| Disb. for FLOOD INSURANCE | 352 | 04/14/2017 | 04/14/2017 | | $(2,138.00) | $(3,660.63) |
| Payment Application | 172 | 05/02/2017 | 05/02/2017 | $401.99 | | $(3,258.64) |
| Disb. for HOMEOWNERS INSURANCE | 351 | 05/09/2017 | 05/09/2017 | | $(1,121.00) | $(4,379.64) |
| Payment Application | 173 | 06/05/2017 | 06/05/2017 | $401.99 | | $(3,977.65) |
| Payment Application | 172 | 06/29/2017 | 06/29/2017 | $401.99 | | $(3,575.66) |
| Payment Application | 173 | 08/07/2017 | 08/07/2017 | $401.99 | | $(3,173.67) |
| Payment Application | 172 | 09/04/2017 | 09/04/2017 | $401.99 | | $(2,771.68) |
| Payment Application | 172 | 10/03/2017 | 10/03/2017 | $401.99 | | $(2,369.69) |
| Payment Application | 172 | 11/14/2017 | 11/14/2017 | $401.99 | | $(1,967.70) |
| Disb. for COUNTY TAX | 312 | 11/27/2017 | 11/27/2017 | | $(870.44) | $(2,838.14) |
| Payment Application | 173 | 02/26/2018 | 02/26/2018 | $1,237.68 | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |
| | | | | | | $(1,600.46) |

Part 3 of form B410A requires Chase to calculate the prepetition escrow deficiency for funds advanced and the projected escrow shortage separately from the principal and interest (P&I) portion of all monthly installments that remain unpaid as of the petition date. In order to make this calculation, Chase adjusts its system to reduce the escrow portion of the monthly installment payment to $0.01 for each escrow advance type. For example, where the unpaid monthly installment payments were $1,200 ($800 P&I, $300 taxes, $100 insurance) prior to bankruptcy, the unpaid monthly installment payments will be reduced to $800.02 ($800 P&I, $0.01 taxes, $0.01 insurance). Please note that to the extent that Private Mortgage Insurance ("PMI") is contained within the monthly installment payment, it is also reduced to a penny in this process.

Because the adjustment process occurs before part 5 of form B410A is completed, any unpaid monthly installment payments listed in column B (and the past due balance in Column G) will be listed at the reduced amount rather than the contractual payment amount listed in monthly statements received prior to bankruptcy.

Monthly installment payments listed on part 5 that were paid prior to the petition date include the full pre-petition escrow payment because those payments were made and applied prior to the reduction of the escrow payment. In the example provided, paid monthly installments in part 5 would be listed at $1,200. Unpaid monthly installments listed in part 5 would be listed at $800.02. The debtor's post-petition escrow payment is also not impacted by this process and is set forth in Part 4 of form B410A.

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21



## PROOF OF CLAIM DISCLOSURES

IN RE: **RIVERA, JR., RICHARD JOHN AND GONZALES-RIVERA, JULIE**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION

CASE NO. 18-50604
CREDITOR: JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

1. The amount of the post-petition payments is subject to change per the terms of the Note and Deed of Trust/Mortgage.
2. This Proof of Claim shall not constitute a waiver of the within party's right to receive service pursuant to Fed. R. Civ. P. 4, made applicable to this proceeding by Fed. R. Bankr. P. 7004 notwithstanding Aldridge Pite, LLP's participation in this proceeding. Moreover, the within party does not authorize Aldridge Pite, LLP, either expressly or impliedly through Aldridge Pite, LLP's participation in this proceeding, to act as its agent for purpose of service under Fed. R. Bankr. P. 7004.

4375 Jutland Drive
P.O. Box 17933
San Diego, CA 92177-0933
(858) 750-7600
www.aldridgepite.com

# InterestOnly ADJUSTABLE RATE NOTE

(One-Year LIBOR Index (As Published in *The Wall Street Journal*) Rate- ~~Caps~~)



Loan No.
MIN:

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

JUNE 12TH, 2005          Santa Cruz                          California
[Date]                   [City]                              [State]

140 COLLEGE ROAD, WATSONVILLE, CA 95076
[Property Address]

**1.     BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $      $450,000.00 (this amount is called "Principal"), plus interest , to the order of Lender. The Lender is ComUnity Lending, Incorporated, a California Corporation.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called "Note Holder."

**2.     INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.625%.          The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.     PAYMENTS**

(A) Time and place of payments

I will make a payment on the first day of every month, beginning on AUGUST 1, 2005 .
Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on     JULY 1, 2035          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
610 Jarvis Drive, Suite 200, Morgan Hill, CA 95037
or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

My monthly payment will be in the amount of U.S.     $2,109.38          before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

( C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

**4.     ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of JULY, 2010                     , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market (LIBOR), as published in *The Wall Street Journal* . The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

( C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rat by adding     TWO AND 250/1000 Percentage points ( 2.250     %) to the Current Index. The Note Holder will then round the result of this

MULTISTATE InterestOnly ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
FE-4265 (0311)

CL fs4265a 10/7/2004

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the First Change Date will not be greater than **10.625%** or less than **2.250%**. Thereafter, my adjustable interest rate will never be increased or decreased on an any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.625**.

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

Before the effective date of any change in my interest rate and / or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly Payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayments may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due on my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Over due Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note holder . The amount of the charge will be **5.000%** of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

( C) Notice of Default

If I am in default, the Note holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest the I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3 (A) above or at a different address if I am given a notice of that different address.

MULTISTATE InterestOnly ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX    CL fe4265n 10/7/2004
FE-4265 (0311)

**9. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is guarantor, surety or endorser of this Note, is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including,, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in it is sold or transferred ( or if borrower is not a natural person and a beneficial interest in Borrower is sold or transferred ) without Lender's prior written consent,, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower . As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including , but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent , Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if : (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

MULTISTATE InterestOnly ADJUSTABLE RATE NOTE - ONE YEAR LIBOR INDEX
FE-4265 (0311)

CL f:4265n 10/7/2004

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____    _____
RICHARD RIVERA, Jr.                   JULIE GONZALES-RIVERA


_____    _____


_____    _____

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

PAY TO THE ORDER OF

WITHOUT RECOURSE
GMAC MORTGAGE CORPORATION

_K. Doherty_
_Limited Signing Officer_

Pay to the Order of
GMAC Mortgage Corporation
Without Recourse

Joanne Wight, Vice President
Acting Agent for GMAC Bank

PAY TO THE ORDER OF

GMAC BANK

**WITHOUT RECOURSE**

Nicole Splsak
Loan Closer
ComUnity Lending, Incorporated
A California Corporation

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

RECORDED AT THE REQUEST OF
SANTA CRUZ TITLE COMPANY

Recording Requested By:    GMAC
ComUnity Lending, Incorporated

**2005-0041379**

Recorded            | REC FEE    60.00
Official Records    |
County Of           |
SANTA CRUZ          |
GARY E. HAZELTON    |
Recorder            |
CAROL D. SUTHERLAND |
Assistant           | EXP
01:11PM 21-Jun-2005 | Page 1 of 18

After Recording Return To:
ComUnity Lending, Incorporated
P.O. Box 700
Morgan Hill, CA 95038-700
Attn: Post Purchase Documentation

—————[Space Above This Line For Recording Data]—————

## DEED OF TRUST

Loan No
M1N

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    JUNE 12TH, 2005,            together with all Riders to this document.

(B) "Borrower" is RICHARD RIVERA, JR. AND JULIE GONZALES-RIVERA, HUSBAND AND WIFE.

Borrower is the trustor under this Security Instrument.

(C) "Lender" is ComUnity Lending, Incorporated.
Lender is a corporation organized and existing under the laws of    California.            Lender's address is
610 Jarvis Drive, Suite 200, Morgan Hill, CA 95037.

(D) "Trustee" is SANTA CRUZ TITLE COMPANY
1955 41ST AVENUE #A-5, CAPITOLA, CA 95010.

(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated    JUNE 12TH, 2005.            The Note states that Borrower owes Lender    FOUR HUNDRED FIFTY THOUSAND AND 00/100 *******

Dollars (U.S.    $450,000.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than    JULY 1ST, 2035.

(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 14

Form 3005  1/01
CL cdca 10/1/04

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

(I) "Riders" means all riders to this Security Instrument that are executed by Borrower. The following riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider    [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider            [ ] Planned Unit Development Rider   [ ] Other(s) [specify]
[ ] 1-4 Family Rider       [ ] Biweekly Payment Rider

RIDER TO DOT

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(K) "Community Association Dues, Fees and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(M) "Escrow Items" means those items that are described in Section 3.

(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the:

   County      of    SANTA CRUZ     :

See Exhibit "A" attached hereto and made a part hereof.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 2 of 14

Form 3005 1/01
CL edcu 10/1/04

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

PARCEL NO.: 051-171-14

which currently has the address of    140 COLLEGE ROAD
                                       [Street]

WATSONVILLE,                  California 95076                    ("Property Address"):
    [City]                       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and nonuniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 6 of 14

Form 3005 1/01
CL cdca 10/1/04

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to; (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until the Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 8 of 14

Form 3005 1/01
CL cdca 10/1/04

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

of 50

Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts, less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at anyone time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

Case 18-50004    Doc 442    Filed 05/31/18    Entered 05/31/18 22:55:05    Page 22 of 50

Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

Case 18-50004   Claim 1-1   Filed 04/05/18   Document 1   Pg 23 of 50   Page 23 of 50

there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup .

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

CALIFORNIA--Single Family--Fannie Mac/Freddie Mac UNIFORM INSTRUMENT
Page 12 of 14

Form 3005  1/01
CL cdca 10/1/04

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____(Seal)          _____(Seal)
RICHARD RIVERA, Jr.            Borrower     JULIE GONZALES-RIVERA          Borrower

_____(Seal)          _____(Seal)
                               Borrower                                    Borrower

_____(Seal)          _____(Seal)
                               Borrower                                    Borrower

Witness:                                    Witness:

_____            _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005  1/01
Page 13 of 14                                                                 CL cdca 10/1/04

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

State of California,

County ss: SANTA CRUZ

On JUNE 14, 2005 before me, BROOKE SQUYRES, NOTARY PUBLIC,
personally appeared

NAME, TITLE OF OFFICER - E.G., "JANE DOE, NOTARY PUBLIC"

RICHARD RIVERA, Jr., JULIE GONZALES-RIVERA

[ ] personally known to me - OR - [✓] proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

Brooke Squyr
Signature of Notary

BROOKE SQUYRES
Commission # 1505536
Notary Public - California
Santa Cruz County
My Comm. Expires Aug 3, 2008

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 14 of 14

Form 3005 1/01
CL cdca 10/1/04

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

EXHIBIT "A"

The land referred to herein is described as follows:

SITUATE IN THE COUNTY OF SANTA CRUZ, STATE OF CALIFORNIA AND DESCRIBED AS FOLLOWS:

BEING A PART OF THE LANDS CONVEYED BY JAMES B. CUTTER, ET UX., TO KENNETH GREGORY, ET UX., BY DEED RECORDED DECEMBER 5, 1938 IN VOLUME 358, PAGE 317, OFFICIAL RECORDS OF SANTA CRUZ COUNTY AND

BEGINNING AT A 3/4 INCH PIPE SET ON THE SOUTHWESTERN SIDE OF A COUNTY ROAD 40 FEET IN WIDTH AND KNOWN AS COLLEGE ROAD, FROM WHICH THE MOST NORTHERN CORNER ON THE CENTERLINE OF SAID COLLEGE ROAD OF SAID LANDS CONVEYED BY CUTTER TO GREGORY, AS AFORESAID BEARS NORTH 62° 20' WEST 60.00 FEET TO A 1 INCH PIPE; AND NORTH 18° 25' EAST, AT 8.96 FEET TO A 1 1/4 INCH STEEL BAR; 20.26 FEET DISTANT TO AN 8 INCH SPIKE SET AT SAID MOST NORTHERN CORNER; RUNNING THENCE FROM SAID POINT OF BEGINNING ALONG THE SOUTHWESTERN SIDE OF SAID COLLEGE ROAD SOUTH 62° 20' EAST 60.00 FEET TO A 3/4 INCH PIPE; THENCE LEAVING SAID ROAD SOUTH 25° 12' WEST 106.11 FEET TO A POINT; SOUTH 26° 12' WEST 6 FEET FROM A 1 INCH PIPE; THENCE NORTH 62° 20' WEST 53.64 FEET TO A POINT SOUTH 21° 47' WEST 6.03 FEET FROM A 1 INCH PIPE; THENCE NORTH 21° 47' EAST 106.55 FEET TO THE PLACE OF BEGINNING.

APN:   051-171-14

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

Assessor's Parcel Number: 051-171-14

After Recording Return To:
ComUnity Lending, Incorporated
P.O. Box 700
Morgan Hill, CA 95038-700

Prepared By:
ComUnity Lending, Incorporated
P.O. Box 700
Morgan Hill, CA 95038-700

—————————————[Space Above This Line For Recording Data]——————————————

# FIXED/ ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

Loan No.
MIN

THIS FIXED/ ADJUSTABLE RATE RIDER is made this 12TH day of JUNE, 2005, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the " Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to ComUnity Lending, Incorporated, a California Corporation ("Lender") of the same date and covering the property described in the Security Instrument and located at :

140 COLLEGE ROAD, WATSONVILLE, CA 95076
[Property Address]

THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of 5.625%. The Note also provides for

a change in the initial fixed rate to an adjustable interest rate, as follows:

4.   ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of JULY, 2010, and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate ill be based on an Index. The "Index" is the average of interbank offered rates for one year U.S. dollar- denominated deposits in the London market ("LIBOR), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is base upon comparable

MULTISTATE FIXED /ADJUSTABLE RATE RIDER - WSJ One-Year LIBOR - Single Family INTEREST ONLY   CL fe4266r 10/7/2004
FE-4266 (0309)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

information. The Note Holder will give me notice of this choice.

 (C) Calculation of Changes

  Before each Change Date, the Note Holder will calculate my new interest rate by adding
TWO AND 250/1000     Percentage points ( 2.250    %) to the Current Index. The Note
Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject
to the limits stated in Section 4 (D) below, this rounded amount will be my new interest rate until the next Change
Date.

  The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay
the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate
in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

 (D) Limits on Interest Rate Changes

  The interest rate I am required to pay at the first Change Date will not be greater than 10.625%
or less than   2.250%.     Thereafter, my adjustable interest rate will never be increased or decreased on any
single Change Date by more than two percentage points from the rate of interest I have been paying preceding 12
months. My interest rate will never be greater than 10.625.

 (E) Effective Date of Changes

  My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly
payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment
changes again.

 (F) Notice of Changes

  The Note Holder will deliver or mail to me a notice of any changes in my initial fixed interest rate to an
adjustable interest rate and of any changes in my adjustable interest rate before the effective date of any change. The
notice will include the amount of my monthly payment, any information required by law to be given to me and also
the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

  1. Until Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in
Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

   **Transfer of the Property or a Beneficial Interest in Borrower.**   As used in this Section 18,
"Interest in the Property" means any legal or beneficial interest in the Property, including , but not limited
to, those beneficial interests transferred in a bond for deed , contract for deed, installment sales contract or
escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower
is not a natural person and a beneficial interest in Borrower is sold or transferred ) without Lender's prior
written consent. Lender may require immediate payment in full of all sums secured by this Security
Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by
Applicable law.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall
provide a period of not less than 30 days from the date the notice is given in accordance with Section 15
within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these
sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security
Instrument without further notice or demand on Borrower.

  2. When Borrower's initial fixed interest rate changes to an adjustable interest rate under the terms stated in
Section A above, Uniform Covenant 18 of the Security Instrument described in Section B1 above shall then cease to
be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as
follows:

   **Transfer of the Property or a Beneficial Interest in Borrower** . A s used in this Section 18,
"Interest in the Property" means any legal or beneficial interest in the Property, including , but not limited
to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or
escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

   If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower
is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior
written consent , Lender may require immediate payment in full of all sums secured by this Security
Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by
Applicable Law. Lender also shall not exercise this option if : (a) Borrower causes to be submitted to Lender

MULTISTATE FIXED /ADJUSTABLE RATE RIDER - WSJ one-year LIBOR - Single Family INTEREST ONLY    CL fc4266r 10/7/2004
FE-4266 (0309)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

Case 18-50664   Claim 1-12   Filed 08/25/18   Desc Main Document   Page 30
of 50

information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to terms and covenants contained in this Fixed/Adjustable Rate Rider.

RICHARD RIVERA, Jr.

JULIE GONZALES-RIVERA

MULTISTATE FIXED /ADJUSTABLE RATE RIDER - WSJ one-year LIBOR - Single Family INTEREST ONLY     CL fe4266r 10/7/2004
FE-4266 (0309)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

[RECORDING REQUESTED BY]
NATIONWIDE TITLE CLEARING
[AND WHEN RECORDED MAIL TO]
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

Loan #

## CORPORATE ASSIGNMENT OF DEED OF TRUST

--- Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COMUNITY LENDING, INCORPORATED, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026) by these presents does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein, without recourse, representation or warranty, together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 KANSAS LANE, MC 8000, MONROE, LA 71203 (866)756-8747, ITS SUCCESSORS OR ASSIGNS, (ASSIGNEE).

Said Deed of Trust made by RICHARD RIVERA, JR AND JULIE GONZALES-RIVERA, HUSBAND AND WIFE and recorded on 06/21/2005 as Instrument # 2005-0041379 in Book n/a, Page n/a in the office of the SANTA CRUZ County Recorder, California.

Dated on 11 / 01 / 2011 (MM/DD/YYYY)
MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COMUNITY LENDING, INCORPORATED, ITS SUCCESSORS AND ASSIGNS

By: _Marawthe Willes_
_Marawthe Williams_
_Vice President_

STATE OF LOUISIANA    PARISH OF OUACHITA
The foregoing instrument was acknowledged before me on 11 / 01 / 2011 (MM/DD/YYYY) by _Marawtha Wellce_ as _Vice President_ of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR COMUNITY LENDING, INCORPORATED, ITS SUCCESSORS AND ASSIGNS, who, being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

_Angeletta Payne_
_Angela Ruth Payne_
Notary Public - State of LOUISIANA
Commission expires: Upon My Death

Prepared By: E. Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

JPCAS            WAMU            MIN            MERS PHONE 1-888-679-MERS

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

## ILLEGIBLE NOTARY DECLARATION

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary _Angela Ruth Payne_

Date commission expires _Upon Notary's death_

Notary identification number _60422_
(For Notaries commissioned after 1-1-1992)

Manufacturer/Vendor identification number _N/A_
(For Notaries commissioned after 1-1-1992)

Place of execution of this declaration _Parish of Ouachita_

Dated _11/1/2011_

Signed _____
(Firm name, if any)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

Recording requested
by (and when recorded
return to):

Nationwide Title Clearing
Attn: Jessica Fretwell
2100 Alt 19 North
Palm Harbor, FL 34683



2011-0050053 12/02/2011 09:08:37 AM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $24.00
COUNTY TAX: $0.00
CITY TAX: $0.00

ADTR
1 PGS
RCD13Z

(This space for recorder's use only)

**Assignment of Mortgage**
*Title of Document*

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Gov't. Code 27361.6)
(Additional recording fee applies)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower ("I"):[1] **RICHARD RIVERA and JULIE GONZALES-RIVERA**
Lender or Servicer ("Lender"): **JPMORGAN CHASE BANK, N.A.**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
**JUNE 12, 2005**
Loan Number:
Property Address ("Property"): **140 COLLEGE RD, WATSONVILLE, CALIFORNIA 95076**

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.   **My Representations and Covenants. I** certify, represent to Lender, covenant and agree:

   A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B.   The Property has not been condemned;
   C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D.   I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));
   E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  **UNIFORM INSTRUMENT**   ver. 09_21_2015_11_00_29   Form 3157  3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
*(page 1 of 10 pages)*

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

G.   I have made or will make all payments required under a Trial Period Plan.

H.   If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3, the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **NOVEMBER 01, 2015** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a Trial Period Plan, this modification will not take effect. The first modified payment will be due on **NOVEMBER 01, 2015.**

A.   The Maturity Date will be: **OCTOBER 01, 2055.**

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan.   The new principal balance of my Note will be **$426,093.59** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.   Interest at the rate of **3.375%** will begin to accrue on the New Principal Balance as of **OCTOBER 01, 2015,** and the first new monthly payment on the New Principal Balance will be due on **NOVEMBER 01, 2015.** My payment schedule for the modified loan is as follows:

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac   UNIFORM INSTRUMENT   ver. 09_21_2015_11_00_29   Form 3157 3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
(page 2 of 10 pages)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount[1] | Total Monthly Payment[1] | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|---------------------------------------------|--------------------------|-------------------|----------------------------|
| 1-40 | 3.375% | 10/01/2015 | $1,618.86 | $402.52, may adjust periodically | $2,021.38, may adjust periodically | 11/01/2015 | 480 |

[1]The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or simple interest rate.

I understand that, if I have a pay option adjustable-rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4.  **Additional Agreements.** I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or other assistance plan that I previously entered into with Lender.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT  ver. 09_21_2015_11_00_29  Form 3157  3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
(page 3 of 10 pages)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

C. To comply, except to the extent that they are modified by this Agreement or by the United States Bankruptcy Code, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That, if I am in bankruptcy upon execution of this document, I will cooperate fully with Lender in obtaining any required bankruptcy court and trustee approvals in accordance with local court rules and procedures. I understand that if such approvals are not received, then the terms of this Agreement will be null and void. If this Agreement becomes null and void, the terms of the original Loan Documents shall continue in full force and effect and such terms shall not be modified by this Agreement.

E. Intentionally Deleted.

F. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms.

G. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement or by the United States Bankruptcy Code, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

H. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

I. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

J. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -- Single Family -- Fannie
Mae/Freddie Mac UNIFORM INSTRUMENT   ver. 09_21_2015_11_00_29   Form 3157 3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
(page 4 of 10 pages)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

Loan Number

K. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

L. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective document, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

M. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, 1-888-679-MERS (1-888-679-6377). In cases where the loan has been registered with MERS, who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

N. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD-certified housing counselor. I understand and consent that Lender and any such HUD-certified housing counselor may pull my credit report if I receive housing counseling.

O. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 09_21_2015_11_00_29   Form 3157  3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
(page 5 of 10 pages)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

Case 18-50604   Doc 4412   Filed 05/25/18   Entered 07/16/18 13:39:59   Page 39 of 50

under this Section 4.O. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

P. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

Q. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit. This means that I cannot obtain additional advances, and must make payments according to this Agreement. (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT ver. 09_21_2015_11_00_29 Form 3157 3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
(page 6 of 10 pages)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

Case 18-50604 Claim 4412 Filed 05/25/18 Desc Main Document Page 40 of 50

Loan Number ███████

## TO BE SIGNED BY BORROWER ONLY

BORROWER SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And RICHARD RIVERA and JULIE GONZALES-RIVERA, LOAN NUMBER ███████ WITH A MODIFICATION EFFECTIVE DATE OF November 01, 2015

In Witness Whereof, the Borrower(s) have executed this agreement.

Borrower - **RICHARD RIVERA**                    Date: 10 , 3 , 15

Borrower - **JULIE GONZALES-RIVERA**             Date: 10 , 03 , 15

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac   UNIFORM INSTRUMENT    ver. 09_21_2015_11_00_29    Form 3157 3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
*(page 7 of 10 pages)*

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

**Loan Number** ▮▮▮▮▮▮▮

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of **CALIFORNIA**  )

County of __Santa Cruz__  )
    **Enter County Here**

On __10-3-2015__ , before me, __D. Castillo_____ , Notary Public,
                              (insert name here)

personally appeared **RICHARD RIVERA AND JULIE GONZALES-RIVERA**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument, and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)
    **Enter Notary Name EXACTLY as it appears on Notary Stamp**



> D. CASTILLO
> Commission # 2086567
> Notary Public - California
> Santa Cruz County
> My Comm. Expires Oct 18, 2016

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT -- Single Family -- Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 09_21_2015_11_00_29   Form 3157 3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
*(page 8 of 10 pages)*

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

## TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. And RICHARD RIVERA and JULIE GONZALES-RIVERA, LOAN NUMBER WITH A MODIFICATION EFFECTIVE DATE OF November 01, 2015

In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A.**

By: _____

Printed Name:

Cathleen Birli
Vice President

Date: _____

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 09_21_2015_11_00_29   Form 3157  3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
(page 9 of 10 pages)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

Loan Number

State of MICHIGAN
County of OAKLAND

Acknowledged by _____ Cathleen Birll _____, Vice President of JPMORGAN CHASE
BANK, N.A. before me on the _12_ day of _____ OCT _____, _2015_

Signature _____

Printed name **Delana Reaves**

Notary public, State of MICHIGAN, County of **MACOMB**

My commission expires **DEC 1 7 2019**

Acting in the County of OAKLAND



DELANA REAVES
NOTARY PUBLIC – STATE OF MICHIGAN
COUNTY OF MACOMB
My Commission Expires 12/17/2019
Acting in the County of _oak___

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT  ver. 09_21_2015_11_00_29  Form 3157 3/09 (rev. 7/12)(CHF rev. 07/12)

CR42439
OP362
(page 10 of 10 pages)

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

# CHASE ○

3415 Vision Dr
Columbus OH 43219
1-800-848-9136

## Annual Escrow Account Disclosure Statement

| | | | | |
|---|---|---|---|---|
| **NAME** | RICHARD RIVERA | | **LOAN NUMBER** | |
| **NAME** | JUL E GONZALES-RIVERA | | **ANALYSIS AS OF** | 3/20/2018 |
| **ADDRESS** | 140 COLLEGE RD | | | |
| **CITY,STATE,ZIP** | WATSONVILLE CA 95076 | | | |

| CURRENT LOAN INFORMATION: | | PRIOR PAYMENT BREAKDOWN: | | NEW PAYMENT BREAKDOWN: | |
|---|---|---|---|---|---|
| PRINCIPAL BALANCE: | $416 564.85 | P&I | $1,618.86 | P&I | $1 618.86 |
| (THIS IS NOT YOUR PAYOFF AMOUNT) | | ESCROW | $0.02 | ESCROW | $416.66 |
| ESCROW BALANCE: | ($1,800.46) | OTHER ESCROW | | SHORTAGE SPREAD | $0.00 |
| NEXT PAYMENT DUE: | 9/1/2017 | SUBSIDY | | OTHER ESCROW | $0.00 |
| ANTICIPATED ESCROW BALANCE: | ($2,470.76) | TOTAL | $1,618.88 | SUBSIDY | $0.00 |
| | | | | TOTAL | $2,035 52 |

**NEW PAYMENT EFFECTIVE DATE:** 4/1/2018

### GENERAL ESCROW ACCOUNT INFORMATION

| ESCROW ITEM | NEXT DUE DATE | PROJECTED ANNUAL DISBURSEMENTS | DIVIDED BY PAYMENTS PER YEAR | MONTHLY REQUIREMENT |
|---|---|---|---|---|
| County Tax | 3/1/2018 | $870.44 | 12 | $72 63 |
| County Tax | 11/1/2018 | $870.44 | 12 | $72 54 |
| Insurance | 5/1/2018 | $1,121.00 | 12 | $93.42 |
| Flood Insurance | 4/1/2018 | $2,138.00 | 12 | $178.17 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |
| | | | 12 | $0.00 |

| | | | | |
|---|---|---|---|---|
| **TOTAL MONTHLY ESCROW PAYMENT** | $416 66 | | **TOTAL CUSHION** | $0.00 |

**NOTE:** Private Mortgage and Mortgage Insurance is not included in the Allowable Cushion. Per the General Escrow Account Information above, the amount of this insurance you have is: $0.00 per month. This amount times the number of Allowable Cushion months has been withheld from the total Cushion used in calculating the Target Balance.

### SURPLUS OR SHORTAGE CALCULATION:

| PROJECTED LOW BALANCE | + CUSHION | = TARGET BALANCE | ANTICIPATED ESCROW BALANCE | - TARGET BALANCE | = SHORTAGE |
|---|---|---|---|---|---|
| $2,425.88 | $0.00 | $2,425.88 | ($2,470.76) | $2,425.88 | ($4,896.44) |

| # MONTHS CUSHION | 0 | SHORTAGE/SURPLUS SPREAD IN MONTHS | 12 |
|---|---|---|---|

**NOTE:** Target Balance is the beginning balance necessary to bring your escrow account, at its lowest point during the next 12 months, to zero plus the allowed cushion. The Anticipated Balance is your current escrow balance, adding any payments and subtracting any bills due not yet paid between the Analysis As of Date and the New Payment Effective Date.

### NEW PAYMENT CALCULATION:

| TOTAL AMOUNT PER PAYMENT | + OTHER ESCROWS | + SHORTAGE SPREAD | + PRINCIPAL & INTEREST | = TOTAL NEW PAYMENT |
|---|---|---|---|---|
| $416 66 | $0.00 | $0.00 | $1,618.86 | $2,035.52 |

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

## Anticipated Escrow Balance Calculation

| | |
|---|---|
| Loan Number: | |
| Mortgagor: | RICHARD RIVERA |
| Current Due Date of Loan: | 9/1/2017 |
| Effective Date of Analysis: | 4/1/2018 |

| Description | Amount | Balance |
|---|---|---|
| Current Escrow Balance | ($1,600.46) | ($1,600.46) |
| Total Escrow Due | $0.14 | ($1,600.32) |
| County Tax 3/2018 | ($870.44) | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |
| | | ($2,470.76) |

| | | | |
|---|---|---|---|
| **Anticipated Escrow Balance Effective** | 4/1/2018 | ($2,470.76) |

**Directions:**
1) Add any payments yet to be made OR subtract any payments already made up to the effective date of the analysis.

For example: The loan is due for 10/1/04. The effective date is 11/1/04. ADD the October payment for escrow only, as shown on REI1. *This should be entered as a positive.*

For example: The loan is due for 1/1/05. The effective date is 11/1/04. SUBTRACT the December -and- November payments as made on RE history. *These should be entered as a negative.*

2) Subtract any escrow bills due between today's date and the effective date of the analysis. *These should be entered as a negative.*

*The Anticipated Escrow Balance used on your Escrow Analysis statement is the calculated or "anticipated" escrow balance expected to be in your escrow account on the effective date of the Analysis. The Anticipated Escrow Balance is subtracted from your Target Escrow Balance to determine your escrow shortage or surplus.*

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

## Target Balance Calculation

Loan #

| | |
|---|---|
| Escrow Analysis Dated: | 3/20/2018 |
| Low Point Balance: | $2,425.68 |

| Date | Deposits | Disbursements | Total |
|---|---|---|---|
| When calculating low point, always start with a zero balance | | | $0.00 |
| 04/2018 | $416.66 | | $416.66 |
| | | $2,138.00 | ($1,721.34) |
| 05/2018 | $416.66 | | ($1,304.68) |
| | | $1,121.00 | ($2,425.68) |
| 06/2018 | $416.66 | | ($2,009.02) |
| 07/2018 | $416.66 | | ($1,592.36) |
| 08/2018 | $416.66 | | ($1,175.70) |
| 09/2018 | $416.66 | | ($759.04) |
| 10/2018 | $416.66 | | ($342.38) |
| 11/2018 | $416.66 | | $74.28 |
| | | $870.44 | ($796.16) |
| 12/2018 | $416.66 | | ($379.50) |
| 01/2019 | $416.66 | | $37.16 |
| 02/2019 | $416.66 | | $453.82 |
| 03/2019 | $416.66 | | $870.48 |
| | | $870.44 | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |
| | | | $0.04 |

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

## Detailed Escrow Summary

| LOAN NUMBER | BORROWER | ACTIVITY FROM - TO | ESCROW START |
|---|---|---|---|
| | RICHARD RIVERA | 3/1/2017 to 3/20/2018 | ($1,467.15) |
| TRANSACTION_DATE | ESCROW_AMT | TRAN_DESCRIPTION | RUNNING_ESCROW |
| 2/26/2018 | $1,237.68 | PAYMENT | ($1,600.46) |
| 11/27/2017 | ($870.44) | COUNTY TAX | ($2,838.14) |
| 11/14/2017 | $401.99 | PAYMENT | ($1,967.70) |
| 10/3/2017 | $401.99 | PAYMENT | ($2,369.69) |
| 9/4/2017 | $401.99 | PAYMENT | ($2,771.68) |
| 8/7/2017 | $401.99 | PAYMENT | ($3,173.67) |
| 6/29/2017 | $401.99 | PAYMENT | ($3,575.66) |
| 6/5/2017 | $401.99 | PAYMENT | ($3,977.65) |
| 5/9/2017 | ($1,121.00) | HOMEOWNERS INSURANCE | ($4,379.64) |
| 5/2/2017 | $401.99 | PAYMENT | ($3,258.64) |
| 4/14/2017 | ($2,138.00) | FLOOD INSURANCE | ($3,660.63) |
| 4/4/2017 | $401.99 | PAYMENT | ($1,522.63) |
| 3/21/2017 | ($859.46) | COUNTY TAX | ($1,924.62) |
| 3/6/2017 | $401.99 | PAYMENT | ($1,065.16) |
| 3/1/2017 | | | ($1,467.15) |

Reviewer ID: Tamar_Belcher_2018-05-23_10:31:21

1  Bryan S Fairman (SBN 261087)
   bfairman@aldridgepite.com
2  Joseph C. Delmotte (SBN 259460)
   jdelmotte@aldridgepite.com
3  **ALDRIDGE PITE, LLP**
   4375 Jutland Drive, Suite 200
4  P.O. Box 17933
   San Diego, CA 92177-0933
5  Telephone: (858) 750-7600
   Facsimile: (619) 590-1385
6
   Attorneys for
7  JPMorgan Chase Bank, National Association

8

9                    **UNITED STATES BANKRUPTCY COURT**

10        **NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

11  In re                                    Case No. 18-50604

12                                           Chapter 13
    JULIE GONZALES-RIVERA and RICHARD
13  JOHN RIVERA, JR.,                        **PROOF OF SERVICE**

14           Debtor.

15

16      I, Maricela Sanchez-Estrada, declare that:

17      I am employed in the County of San Diego. My business address is: 4375 Jutland Drive, Suite

18  200; P.O. Box 17933, San Diego, CA 92177-0933. I am over the age of eighteen years and not a party

19  to this case.

20      On May 25, 2018, I served the PROOF OF CLAIM (WITH ATTACHMENTS) AND

21  SERVICE OF PAPERS AND RESERVATION OF RIGHTS by electronic means through the court's

22  CM/ECF system or by placing true and correct copies thereof enclosed in a sealed envelope with postage

23  thereon fully prepaid in the United States Mail at San Diego, California, addressed as follows:

24

25                            **DEBTORS**
                       Richard John Rivera, Jr.
26                      Julie Gonzales-Rivera
                          140 College Rd.
27                      Watsonville, CA 95076
                          (Via U.S. Mail)
28

                                                    - 1 -                CASE NO. 18-50604
                                          **PROOF OF SERVICE**

**DEBTORS' ATTORNEY**
Paul Seabrook
Seabrook Law Offices
2055 Junction Ave. #138
San Jose, CA 95131
bankruptcy@seabrooklawoffices.com
(Via NEF)

**TRUSTEE**
Devin Derham-Burk
P.O. Box 50013
San Jose, CA 95150-0013
ctdocs@ch13sj.com
(Via NEF)

**U.S. TRUSTEE**
Office of the U.S. Trustee / SJ
U.S. Federal Bldg.
280 S 1st St. #268
San Jose, CA 95113-3004
USTPRegion17.SJ.ECF@usdoj.gov
(Via NEF)

I declare under penalty of perjury that the foregoing is true and correct.

Dated: <u>May 25, 2018</u>          /s/ Maricela Sanchez-Estrada
                                   MARICELA SANCHEZ-ESTRADA

- 2 -                              CASE NO. 18-50604
**PROOF OF SERVICE**