**Fill in this information to identify the case:**

Debtor 1    Richard John Rivera, Jr.

Debtor 2    Julie Gonzales-Rivera
(Spouse, if filing)

United States Bankruptcy Court for the:   Northern District of California

Case number   18-50604

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1:   Identify the Claim

| | |
|---|---|
| 1. Who is the current creditor? | Aspen G LLC <br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor   Aspen Properties Group, LLC |
| 2. Has this claim been acquired from someone else? | ☐ No <br> ☑ Yes. From whom?   Trinity Financial Services, LLC |

3. Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Aspen G LLC
Name

2700A Philadelphia Road
Number    Street

Edgewood    MD    21040
City    State    ZIP Code

Contact phone   443-863-6294

Contact email   marysue@aspenfunds.net

Where should payments to the creditor be sent? (if different)

FCI Lender Services, Attn Loan Servicing Dept
Name

P. O. Box 27370
Number    Street

Anaheim Hills    CA    92809
City    State    ZIP Code

Contact phone   800-937-2424

Contact email   customerservice@trustfci.com

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

| | |
|---|---|
| 4. Does this claim amend one already filed? | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____      Filed on _____ <br>                                                MM / DD / YYYY |
| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

| | | |
|---|---|---|
| 6. | Do you have any number you use to identify the debtor? | ☐ No <br> ☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:   0    5    9    2 |
| 7. | How much is the claim? | $ _____ 279,326.35 . Does this amount include interest or other charges? <br> ☐ No <br> ☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. | What is the basis of the claim? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. <br><br> Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). <br><br> Limit disclosing information that is entitled to privacy, such as health care information. <br><br> Money Loaned (Note and Mortgage dated 07/16/2007) |
| 9. | Is all or part of the claim secured? | ☐ No <br> ☑ Yes.   The claim is secured by a lien on property. <br><br> **Nature of property:** <br> ☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.* <br> ☐ Motor vehicle <br> ☐ Other. Describe: _____ <br><br> **Basis for perfection:**    Note and Mortgage dated 07/16/2007 <br> Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) <br><br> Value of property:     $ _____ 480,000.00 <br> Amount of the claim that is secured:    $ _____ 279,326.35 <br> Amount of the claim that is unsecured: $ _____ 0.00 (The sum of the secured and unsecured amounts should match the amount in line 7.) <br><br> Amount necessary to cure any default as of the date of the petition:    $ _____ 89,144.43 <br><br> Annual Interest Rate (when case was filed) ___ 4.75 % <br> ☐ Fixed <br> ☑ Variable |
| 10. | Is this claim based on a lease? | ☑ No <br> ☐ Yes. Amount necessary to cure any default as of the date of the petition.    $ _____ |
| 11. | Is this claim subject to a right of setoff? | ☑ No <br> ☐ Yes. Identify the property: _____ |

Case 8-18-08304   Doc 44-3   Filed 05/29/18   Entered 07/16/18 13:39:59   Page 2 of 29

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check all that apply:* | **Amount entitled to priority** |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).  $_____

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).  $_____

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).  $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).  $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).  $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.  $_____

\* Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/29/2018
                   MM / DD / YYYY

/s/ Kristin A. Zilberstein
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Kristin A. Zilberstein, Esq. | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Authorized Agent for Creditor | | |
| Company | The Law Offices of Michelle Ghidotti | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 1920 Old Tustin Ave. | | |
| | Number        Street | | |
| | Santa Ana | CA | 92705 |
| | City | State | ZIP Code |
| Contact phone | 949-427-2010 | Email | kzilberstein@ghidottilaw.com |

Case 8-18-06804   Doc 44-3   Filed 06/29/18   Entered 07/16/18 13:39:59   Page 3 of 29

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

| Part 1: Mortgage and Case Information | | Part 2: Total Debt Calculation | | Part 3: Arrearage as of Date of the Petition | | Part 4: Monthly Mortgage Payment | |
|---|---|---|---|---|---|---|---|
| Case number: | 16-52851 | Principal balance: | $196,204.34 | Principal & interest due: | $56,105.40 | Principal & interest: | $1,834.88 |
| Debtor 1: | Richard J. Rivera, Jr. | Interest due: | $50,082.98 | Prepetition fees due: | $33,039.03 | Monthly escrow: | N/A |
| Debtor 2: | Julie Gonzales-Rivera | Fees, costs due: | $33,039.03 | Escrow deficiency for funds advanced: | 0.00 | Private mortgage insurance: | N/A |
| Last 4 digits to identify: | 0 5 9 2 | Escrow deficiency for funds advanced: | $ 0.00 | Projected escrow shortage: | 0.00 | Total monthly payment: | $1,834.88 |
| Creditor: | Aspen G LLC | Less total funds on hand: | − 0.00 | Less funds on hand: | − 0.00 | | |
| Servicer: | FCI Lender Services | Total debt: | $279,326.35 | Total prepetition arrearage: | $89,144.43 | | |
| Fixed accrual/daily simple interest/other: | Daily Simple Interest | | | | | | |

## Part 5: Loan Payment History from First Date of Default

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |
| None | | | | | | | | | | | | | | | | |

Case 18-50504 Doc 44-3 Filed 05/29/18 Entered 07/16/18 13:39:59 Page 4 of 29

Case number: _____

Debtor 1: _____

**Part 5 : Loan Payment History from First Date of Default**

| | | Account Activity | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **A.** Date | **B.** Contractual payment amount | **C.** Funds received | **D.** Amount incurred | **E.** Description | **F.** Contractual due date | **G.** Prin, int & esc past due balance | **H.** Amount to principal | **I.** Amount to interest | **J.** Amount to escrow | **K.** Amount to fees or charges | **L.** Unapplied funds | **M.** Principal balance | **N.** Accrued interest balance | **O.** Escrow balance | **P.** Fees / Charges balance | **Q.** Unapplied funds balance |

Case 18-50304 Doc 443 Filed 05/29/18 Desc Main Document 07/16/18 13:39 Page Page 5 of 29

You, the undersigned, are opening an Equity Reserve Line of Credit (Line) with National City Bank (Bank) and agree that the following material terms and conditions will apply to your Line

**Line of Credit**  Your Line is an open-end line of credit which you may use to obtain cash advances (Advances) from time to time for a period of 10 years (9 years 10 months in Connecticut) (Draw Period)  If you continue to meet Bank's then current credit and collateral value criteria  at Bank's discretion, Bank will either extend the Draw Period for one or more additional Draw Periods or Bank may refinance your Line on the terms then being offered by Bank for Equity Reserve Lines of Credit. If your Draw Period is not renewed or the Line refinanced, you may repay any outstanding balance during the Repayment Period as provided in the Payment section below

**The initial amount of your Line is $  200,300.00**     (Credit Line)  You have the option anytime during the Draw Period of this Agreement to create Fixed Rate Locks of all or part of your Line at a fixed rate and for a fixed payment  The Fixed Rate Lock (FRL) balance includes the FRL advance fee  Any amount you repay on the Line and/or on an FRL will be again available to you on the Line until the end of the Draw Period  Bank may reduce the amount of your Credit Line under certain conditions described in this Agreement

**Advances**  You may obtain Advances under your Line by issuing Equity Reserve checks and special FRL checks (each a Checks) supplied by Bank  by contacting Customer Service or by way of any other Bank approved plan  Bank will charge your Checks directly against your Line  You may make arrangements for an Advance on your Line to pay off any FRL at any time by contacting Customer Service at the address or phone number on your statement  You should notify Bank when you need more Checks  The minimum FRL Advance that you can receive using an FRL Check is $5,000  FRL Check Advances will automatically have a 20-year Repayment Term  You may contact Customer Service after a FRL Check issues to your Line to change the Repayment Terms to one of the other available terms listed in the Fixed Rate Lock Advances section below, however, FRL Advances charged to another Repayment Term will be subject to finance charges at the annual percentage rate in effect the day the new FRL Repayment Term is applied by Customer Service  FRL Advances for terms other than 20 years may also be obtained by contacting Customer Service instead of by Check  FRL Checks for less than $5,000 will be posted as a Line Advance  You should also notify Bank immediately if your Checks are lost or stolen  (Please see the "Stop Payment Orders" section of this Agreement)  Your statement will list Checks that have been paid, but the actual paid Checks will not be returned to you  You may request copies of paid Checks from the Bank, and a copying fee may be charged

Bank will issue you a Card or Cards for use with the Line except in Connecticut, New York and Texas and in other states where such access is limited  The word Card can mean one or more credit cards or Automated Teller Machine (ATM) cards  You authorize Bank to issue you a Card for use with the Line  You may purchase goods or services from merchants who honor the Card  You may also obtain Advances from Bank or any other financial institution that honors the Card  You may also obtain Advances by using a Personal Identification Number (PIN) for telephone banking or on-line banking Advances  Bank will charge all Advances to your Line

If you allow someone else to use your Card or PIN and you want to stop such use, you must let Bank know in writing  You must notify Bank immediately if your Cards or PIN are lost or stolen, or you believe that someone may be using your Card(s) or PIN without permission  You will not use your Line after notifying Bank of loss, theft or unauthorized use of your Card(s) or PIN  You will not be held liable for any unauthorized use of the Card or PIN after you have notified Bank of the loss or theft by phone at 1-800-553-6596 or in writing at National City Card Services, P.O. Box 4092, Kalamazoo, Michigan 49003  (Otherwise you may be liable, but not for more than $50 )  Bank may terminate the use of your Card, PIN or Checks if you lose your Card, PIN or Checks two times or more in a twelve-month period  Bank may also terminate the use of your Card or PIN if your new balance exceeds your Credit Line by 2% or if you are over limit for more than one billing cycle

Bank will have no obligation to honor any Advance by any means if the resulting new balance of your Line would exceed your Credit Line  or after the Draw Period ends, or in the event of termination or suspension of your Credit Line under the conditions described in this Agreement  and upon Bank's request you will return Checks and/or Cards  Your Line may not be used for Internet lottery, betting or gambling transactions or for any illegal transactions

Charges from foreign merchants and financial institutions may be made in a foreign currency  Bank will bill you in U.S. Dollars based on the exchange rate on the day Bank settles the transaction, plus any special currency exchange charges  In the case of VISA Accounts  the exchange rate applied to each such transaction is a rate selected by Visa from a range of rates available in wholesale currency markets for the applicable central processing date, which rate may vary from the rate Visa itself receives, or the government-mandated rate in effect for the applicable central processing date  In addition  Bank will charge a foreign transaction fee of 1% of the converted amount  Because of the special charges and possible differences in exchange rates between the time Bank settles and the time you initiated the transaction, the total charge for a foreign transaction may be greater than the cash advance or purchase at the time it was made

**Finance Charge for Line and Fixed Rate Lock Advances and During the Repayment Period**

a) Line Advances.  Bank figures the finance charge on your Line by applying the periodic rate to the "average daily balance" of your Line  To get the "average daily balance," Bank takes the beginning balance of the Line each day, adds any new Advances including if applicable the broker and processing fees, and other debits, and subtracts any payments or credits and unpaid periodic finance charges  This gives the daily balance  Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle  This gives the "average daily balance"

Advances are subject to finance charges from the date of transaction to the date payment is posted to the Line  The periodic rate of finance charge and the annual percentage rate are subject to change, based on the value of an index  The index in effect for each billing cycle shall be the "Prime Rate" of interest appearing in the Money Rates Table of The Wall Street Journal published on the first day of your Billing Cycle (or, if not published on that date, the last edition published prior to that date), rounded upward, if necessary, to the nearest  01% (Line Index)

**The ANNUAL PERCENTAGE RATE** is the Line Index plus  0.000    %(Line Margin)  The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12  As of  **07/12/2007**   the current periodic rate of **FINANCE CHARGE** is    0.688  % per month, which corresponds to an **ANNUAL PERCENTAGE RATE** of **8.250**%

The annual percentage rate and the periodic rate of finance charge may increase if the Line Index increases  In the event of an increase, the finance charge will increase and the minimum payment amount may increase  If the minimum payment amount is either 1 5% of the new balance or the total finance charges, an increase or decrease in the annual percentage rate will result in a corresponding increase or decrease in the minimum payment amount

b) Fixed Rate Lock Advances:  Bank figures the finance charge on each FRL by applying the periodic rate to the "average daily balance" of the FRL  To get the "average daily balance," Bank takes the beginning balance of the FRL each day and subtracts any payments or credits and unpaid periodic finance charges  This gives the daily balance  Then, Bank adds up all the daily balances for the billing cycle and divides the total by the number of days in the billing cycle  This gives the "average daily balance"

Each FRL is subject to finance charges from the date of the transaction until paid in full  The periodic rate and the annual percentage rate are determined and fixed on the business day the transaction posts to your Line  The index shall be the highest daily rate for 3 year treasury notes with constant maturities from the 1st business day through the 11th business day of the calendar month preceding the month in which the transaction posts to your Line, rounded, if necessary, to the nearest 0 125% (FRL Index)  The FRL Index can be found in the Federal Reserve Statistical Release H 15 at www federalreserve gov/releases/h15

REDACTED

NHEERA1 (04/13/2005)

The **ANNUAL PERCENTAGE RATE** is the FRL Index plus a margin (FRL Margin). The **FINANCE CHARGE** for each billing cycle shall be computed at the annual percentage rate divided by 12. As of **07/16/2007**, the FRL Margin, the current periodic rate of **FINANCE CHARGE** per month and corresponding **ANNUAL PERCENTAGE RATE** for each FRL Repayment Term are listed in the table below

| FRL Repayment Term | FRL Margin | Monthly Periodic Rate of **FINANCE CHARGE** | **ANNUAL PERCENTAGE RATE** |
|---|---|---|---|
| 5-year FRL: 60 monthly payments | 2.750 | 0.656 | 7.875 |
| 10-year FRL: 120 monthly payments | 3.000 | 0.677 | 8.125 |
| 15-year FRL: 180 monthly payments | 3.250 | 0.698 | 8.375 |
| 20-year FRL: 240 monthly payments (automatic term for FRL checks you write) | 3.750 | 0.740 | 8.875 |
| 7-year "Interest Only" FRL: 83 monthly payments of one penny plus finance charges on the FRL balance (including the FRL Advance Fee), followed by a balloon payment of the remaining balance in the 84th month. | 3.000 | 0.677 | 8.125 |

c) Both Line and Fixed Rate Lock Advances: In no event shall the periodic rate of **FINANCE CHARGE** be more than 1.50% per month or less than 0.25% per month and in no event shall the **ANNUAL PERCENTAGE RATE** be more than 18.00% or less than 3.00% The annual percentage rate includes only interest and not other costs. Your monthly statement will disclose the applicable annual percentage rate for the billing cycle

d) Repayment Period Any amount outstanding other than FRL's will be converted to a Fixed Rate Lock balance on the last business day of your Draw Period and will be subject to finance charges for a Fixed Rate Lock based on a 240 month Repayment Term for balances of $10,000 or more or a 120 month Repayment Term for balances of less than $10,000 as stated in subsections (b) and (c) above. The index value is the highest FRL Index from the 1st business day through the 11th last business day of the calendar month preceding the month in which the Draw Period ends, rounded, if necessary, as provided in subsection (b) above

Other Finance Charges        A Broker fee **FINANCE CHARGE** of $        0.00
                A Discount Fee **FINANCE CHARGE** of $        0.00        (0.000 % of Credit Line)
                A Processing Fee **FINANCE CHARGE** of $        0.00
                An FRL Advance Fee **FINANCE CHARGE** of $50 for each Fixed Rate Lock used

Other Charges In addition to finance charges, the following other charges will apply

- An annual fee of $50 reflected on the monthly statement for the first billing cycle of each year of your Draw Period beginning with the 13th billing cycle, whether or not you obtain Advances under your Line. This fee is not refundable.
- A late payment fee of the greater of 10% of the unpaid minimum payment or $40, if Bank does not receive your minimum payment at the address shown on your statement within 10 days of the Due Date. Bank may charge an additional late payment fee for each billing cycle that your Line is past due
- An overlimit fee of $25 whenever you go over your Credit Line. Bank may charge an additional $25 for each billing cycle that you remain over your Credit Line
- A returned payment fee of $30 if you make a payment on your Line which is returned to Bank unpaid because of insufficient funds, a closed account, stop payment, or any other reason
- A returned check fee of $30 if you write a Check that Bank dishonors under the "Advances" section of this Agreement
- A stop payment fee of $30 for the service of stopping payment on a Check and a $30 service fee for renewal of each stop payment order
- A foreign transaction fee of 1% of the transaction amount. This fee is not applicable to transactions in the United States
- An early termination fee of $        0.00        if you close your Line within the first 36 months
- A document request fee of $6 per copy for service of providing copies. Bank will not charge you for documents Bank is required by law to give you at no charge
- Any real estate related closing fees due at the closing of your Line as reflected on the HUD1 settlement statement provided to you by the closing agent which is hereby incorporated and made part of the Agreement by this reference

Bank does not lose any of its other rights under this Agreement whether or not it charges late payment or overlimit fees. You also agree that Bank may also charge you a fee, not otherwise enumerated herein, for services that Bank performs for you that you have requested. The application of any fee shall not cure the default which initiated the fee

Security Interests Your Line will be secured by a mortgage (Mortgage) on your dwelling (Dwelling). If the Dwelling is your primary or secondary residence, you represent and warrant to Bank that at all times during the term of this Agreement your Dwelling, or a minimum of one unit of your multi-unit Dwelling, shall be occupied by you and shall not be used as rental property. Bank agrees to waive any security interest in the Dwelling to the extent it secures Advances which may be in excess of your Credit Line. You name Bank as loss payee and beneficiary of the proceeds of, and assign to Bank any unearned premiums of, all insurance connected with your Line. You must not adversely affect Bank's interest in the Dwelling by any action or inaction. You must keep the Dwelling in good condition, promptly pay all mortgages and other liens against the Dwelling, and promptly pay all taxes and assessments on the Dwelling. You must not sell or transfer title to the Dwelling without Bank's permission, or use the Dwelling for any illegal purpose.

Property Insurance You must keep the Dwelling fully insured against loss or damage on terms that are acceptable to Bank to the extent permitted by law. You must carry flood insurance if required by federal law. You may obtain property insurance or furnish existing property insurance from anyone that is acceptable to Bank provided the insurer is authorized to do business in the state or jurisdiction where the Dwelling is located or is an eligible surplus lines carrier. You agree to furnish Bank with written evidence of such insurance, with Bank named as loss payee and proof of payment of insurance premiums. If you fail to do so, Bank may buy insurance to protect Bank's interest and add the premium cost to the unpaid balance of your Line, subject to the same finance charges as Advances against your Line. You assign to Bank the proceeds from any such insurance policies up to the unpaid balance of your Line. Bank may apply such proceeds, including any return of unearned premiums and payments for claims under such policies, to reduce the unpaid balance of your Line. You irrevocably authorize Bank as your agent and on your behalf to negotiate, settle and release any claim under your insurance and to submit insurance claims for you and to receive and sign your name to any checks or drafts or related papers obtained from insurance companies

Tax Deductibility You should consult a tax advisor regarding the deductibility of interest and charges on your Line

Statements Bank agrees to mail or deliver to you a monthly statement for each billing cycle at the end of which there is a balance which is a debit or credit balance of more than $1 or on which a finance charge has been imposed. The balance is the sum of all outstanding Advances or fees, previous other credits, other charges and debits, and finance charge(s).

REDACTED

**7/22/2006**
NHFFR42 (Rev 06/13/2005)

Payments   Your payments will be due monthly   You may pay the entire unpaid balance of your Line and/or your FRL(s) at any time   You are required to pay a minimum payment by the Due Date shown on your statement equal to the sum of the Line Minimum Payment and the FRL Minimum Payment for each FRL in use.

a) Line Minimum Payment:  The Line Minimum Payment will equal the periodic finance charges that accrued on the outstanding Line balance during the preceding billing cycle as shown on each monthly statement (Interest Only Minimum Payment)

b) The FRL Minimum Payment is:  For all FRL's except the 7 year "Interest Only" FRL, the minimum payment is a fixed payment amount that is sufficient to pay off the FRL, including the FRL Advance Fee, at the fixed rate applicable to that FRL, calculated based on the number of monthly payments for the applicable FRL Repayment Term as described in the section of this Agreement called "Fixed Rate Lock Advances "  If you choose the 7-year "Interest Only" FRL option, the minimum payment is 83 payments of one penny ($.01) plus the finance charges that accrued on the outstanding FRL balance which balance includes the FRL Advance Fee (as described in the section of this Agreement called "Fixed Rate Lock Advances") during the preceding billing cycle as shown on each monthly statement followed by one payment of the outstanding balance   Any amounts still owing at the end of the billing cycle prior to the billing cycle containing the final payment will be added to the final minimum payment due   Additional payments on any FRL may be made at any time but you will continue to be obligated to make the fixed payment for the FRL as long as any amount is still owing on the FRL   The amount of any reduction in principal from a payment on an FRL will become available to you on your Line once it is posted, until the end of the Draw Period   If your Draw Period is not renewed then access to the Line will not be available during the Repayment Period

c) Repayment Period:  The Minimum Payment may not fully repay the principal that is outstanding by the end of the Draw Period   If your Draw Period is not renewed for an additional term, during the Repayment Period you may continue to make scheduled payments on any FRL balances outstanding at the end of the Draw Period until they are paid in full   Additionally, any amount outstanding other than an FRL will be converted to a Fixed Rate Lock without an FRL Advance fee on the last business day of your Draw Period and will be subject to then current finance charges for an FRL of equal Repayment Term as described in the section of this Agreement called "Fixed Rate Lock Advances "  The total amount will be required to be repaid in two hundred forty (240) equal monthly payments for balances of $10,000 or more, or one hundred twenty (120) equal monthly payments for balances of less than $10,000   Any amount still owing after two hundred thirty nine (239) billing cycles or after one hundred nineteen (119) billing cycles respectively, will be added to the final minimum payment due

Payments will be applied in the following order   First, to each FRL on a first in-first out basis for all unpaid periodic finance charges and then to the FRL's principal balance in an amount necessary to amortize the FRL within its amortization schedule, then to all unpaid periodic finance charges on the Line, then to all Other Charges, then to the Line   For introductory and promotional offer balances, payments to the Line are applied on the basis of the lowest rate balance first to highest rate balance last   If there are no balances on the Line, overpayments are applied as a prepayment to the FRL on a first in-first out basis   If there are no balances on any FRL or on the Line, overpayments are credited to the Line and returned upon request   In order to make additional partial prepayments to an FRL or to prepay an FRL in full without paying off your Line, you must contact Customer Service to make arrangements to do so

Stop Payment Orders.  We agree to honor a stop payment order against a Check when received from you within a reasonable time prior to payment   A stop payment order becomes effective after we have actually received the order and had a reasonable time to process it, and the order will remain in effect for thirteen months   Our acceptance of a stop payment order does not mean that the Check has not yet been paid, and we shall have no liability resulting from the payment of a Check before your stop payment order becomes effective   A stop payment order may be renewed for successive periods equal to its original period of effectiveness if we receive a renewal notice prior to the order becoming ineffective

A stop payment order against a Check must accurately describe it as to date, number, amount, and payee, and must correctly recite your name and the Account number   You agree that it is current industry standard to process stop payment orders by means of computer technology   Accordingly, your failure to provide the exact identification of Account number and Check number in order to identify the Check to be stopped will result in the Check being paid if presented, and we will not be liable for such payment   Errors in your name or the Account number, or inaccuracies in the description of the number, amount, issue date or payee on your written stop payment order shall relieve us from any liability for any mistaken payment or wrongful dishonor   Any errors on our written acknowledgment to you of a stop payment order must be reported by you in writing to our Customer Service Department within 10 calendar days of the written acknowledgment date   We shall not be liable for any mistaken payment or wrongful dishonor occurring after the 10-day period, unless errors or inaccuracies are so reported to us within the 10-day period

Before we will release a stop payment order, our Customer Service Department may require the receipt of a written request, signed by you, requesting the withdrawal of the order

In the event we recredit the Account for a paid Check, then you hereby assign to us all rights against third parties   You or any joint account holder may order a stop payment   You agree that we will not be obligated to reimburse you immediately upon notice of alleged wrongful payment, that if we are under no obligation to prove the fact and amount of damage suffered, and that in no case will we be liable for more than your actual damage

We shall not be liable for any damages unless we have failed to act in good faith and exercise ordinary care   You agree to indemnify us and hold us harmless from any and all expenses incurred or damages suffered by us in honoring a stop payment order

To place a stop payment order, write to National City, Equity Reserve Stop Payment Department, 4661 E. Main Street, Columbus, Ohio 43251-4928

Termination of Line   Bank can terminate your Line and require you to pay the entire outstanding balance in one payment if you breach a material obligation of this Agreement in that
- You engage in fraud or material misrepresentation in connection with your Line
- You do not meet the repayment terms of this Agreement.
- Your action or inaction adversely affects the collateral or Bank's rights in the collateral

To the extent permitted by 11 USC 506, Bank shall be entitled to reasonable court costs and attorneys' fees for independent counsel that Bank hires (unless you are a resident of New Hampshire, in which case we may not recover our attorneys' fees from you)   Interest after termination, whether prior to or after judgment by a court of competent jurisdiction, shall accrue upon the outstanding unpaid balance at the rate determined under this Agreement until such balance is paid in full

Suspension or Reduction of Credit Line   Bank can refuse to make additional extensions of credit or reduce your Line if you breach a material obligation of this Agreement in that
- The value of the Dwelling securing your Line declines significantly below its present appraised value for purposes of the credit Line
- Bank reasonably believes you will not be able to meet the repayment requirements due to a material change in your financial circumstances
- You are in default of a material obligation under this Agreement
- Government action prevents the Bank from imposing the annual percentage rate provided for or impairs the Bank's security interest such that the value of the interest is less than 120 percent of the Credit Line
- A regulatory agency has notified the Bank that continued Advances would constitute an unsafe or unsound practice
- The maximum annual percentage rate is reached

If your Line is suspended and you have used any FRL(s) then at Bank's option Bank may terminate the FRL(s) and transfer any FRL balances to your Line

Bank will give you written notice of any such action and conditions for reinstating your credit privileges   Bank may reinstate your credit privileges when the conditions leading to suspension are cured to Bank's satisfaction   Bank may require you to request reinstatement of credit privileges when the conditions leading to suspension or reduction of your Credit Line no longer exist   An additional title examination and other documentation may be required to reinstate your Line, and any costs associated with reinstatement will be paid by you where permitted by law

REDACTED

NHEFRA3 (Rev 04/13/05)

**Change in Terms** Bank may change certain terms of this Agreement at any time by giving you 15 days prior notice
- The index and margin used for this Line if the original index is no longer available
- A change that you specifically agree to.
- A change that benefits you
- An insignificant change
- Other changes permitted by applicable law

Any change in terms will apply to balances outstanding on the effective date of the change as well as to balances generated thereafter

**Other Provisions** You shall promptly notify Bank of any change in circumstances which has a substantial adverse effect on your credit. You will furnish Bank with financial statements in a form satisfactory to Bank as Bank may request from time to time. Bank may also request a title commitment and/or appraisal from time to time, the cost of which will be paid by you

If this Agreement is signed by more than one borrower, each of you may draw Checks on the Line or use the Cards, and each and every borrower is jointly and severally liable for all Advances and charges on the Line. With reasonable notice to process the request, any of you may direct Bank to not make further Advances on the Line, however, reinstatement will only be made on the joint request of all of you.

Your rights in your Line may not be assigned. The Mortgage may not be assumed by a subsequent purchaser of the Dwelling. All fees paid to Bank are not refundable

All of Bank's rights under this Agreement are valid to the extent permitted by applicable law. If it is determined for any reason that any part of this Agreement is invalid or unenforceable, this shall not affect the validity or enforcement of any other provision, and this shall read as if the invalid or unenforceable part were not there

Bank may delay exercising any of its rights under this Agreement without losing them. We may accept late payments or partial payments without losing any of our rights. If your payment is marked with the words "Paid in Full" or similar language, you must send your payment to National City, 6750 Miller Road, Brecksville, Ohio 44141, Locator No. 7107. If your payment is made to any other address, we may accept the payment without losing any of our rights

You understand that Bank is a national bank located in Ohio, and that Bank's decision to extend the Line to you was made in Ohio. Therefore, this Agreement and your use of the Line, Checks and Cards, shall be governed by and construed in accordance with (a) Federal laws and regulations including but not limited to 12 USC § 85 and (b) the laws of Ohio, to the extent Ohio laws are not preempted by federal laws or regulations, and with in regard to conflict of law principles.

The annual IRS Form 1098 will be issued only to the first borrower listed on this Agreement at origination and the designation of a borrower as first cannot be changed subsequently

At Bank's option, Bank may designate an electronic or optically imaged reproduction of this Agreement or any other document related to your Loan as an original document and if it does so, the reproduction may be relied on in full by all parties to the same extent as an original

You can change any term of this Agreement only in a writing signed by us.

You agree that, to the extent not prohibited by applicable law, Bank shall not be liable for any damages unless Bank has failed to act in good faith and exercise ordinary care. You further agree that in no event shall Bank be liable for any consequential, indirect or special damages even if Bank has been advised of the possibility of such damages

From time to time, we may offer you special rates for balance transfer transactions or introductory or promotional offers on your Line. If we do, we will advise you of the annual percentage rates and finance charges associated with the special rate offer, how long they will be in effect, the balances to which they will apply, and other terms of the special rate offer. Any special rate offer will be subject to the terms of the offer and this Agreement. Bank may provide to others, including but not limited to, consumer credit reporting agencies, information about our transactions and experiences with you. Also, Bank and its affiliates (collectively "National City") may share with each other all information about you that National City has or may obtain for the purposes, among other things, of evaluating credit applications. Under the Fair Credit Reporting Act there is certain credit information that cannot be shared about you (unless you are a business) if you tell National City by writing to National City Corporation, Attention: Office of Consumer Privacy, P.O. Box 4068, Kalamazoo, MI 49009. You must include your name, address, Line (account) number and social security number.

You agree that you and Bank have an established business relationship and that, to the extent not prohibited by applicable law, National City may contact you to offer you products and services that National City thinks may be of interest to you. Such contacts are not unsolicited, and National City may contact you by telephone and with an automated dialing and announcing device or by fax at any telephone number you have given to us including the telephone number on your application, or by email or other form of electronic communication and we may monitor telephone calls with you to assure quality service

In this Agreement, the term "affiliates" means current and future affiliates of Bank, including, but not limited to, the following National City Corporation subsidiaries: National City Home Loan Services, Inc., First Franklin Financial Corporation, Madison Bank and Trust Company and National City Mortgage Co

If you believe that we have information about you that is inaccurate or that we have reported or may report to a credit reporting agency information about you that is inaccurate, please notify us of the specific information that you believe is inaccurate in writing to National City, P.O. Box 94982, Cleveland, Ohio 44101, Attn: Credit Bureau Disputes, Locator 7113.

<u>**MINIMUM INITIAL ADVANCE:**</u> If Bank is paying the third party closing costs to open your Line, an initial minimum advance of $25,000 is required

REDACTED

NHEFRA4A (06/06)

**NOTICES.** The following notices are given by Bank only to the extent not inconsistent with 12 U.S.C. Section 85 and related regulations and opinions and/or the choice of law provision set forth herein (with respect to which Bank expressly reserves all rights). You acknowledge receipt of the following notices before becoming obligated

**If the Dwelling is located in California:** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of the Property

**If the Dwelling is located in Colorado:** If your payments are received after the due date, even if received before the date a late fee applies, you may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of principal. This is due to the accrual of daily interest until a payment is received

**If the dwelling is located in Connecticut:** Your initial Draw Period will be 9 years 10 months and cannot be renewed for additional draw periods

**If the Dwelling is located in Florida:** FLORIDA DOCUMENTARY STAMP TAX IN THE AMOUNT REQUIRED BY LAW HAS BEEN PAID OR WILL BE PAID DIRECTLY TO THE DEPARTMENT OF REVENUE, AND FLORIDA DOCUMENTARY STAMPS HAVE BEEN PLACED ON THE TAXABLE INSTRUMENTS AS REQUIRED BY CHAPTER 201, FLORIDA STATUTES

**If the Dwelling is located in Maryland:** We elect Subtitle 9, Credit Grantor Open End Credit Provisions, of Title 12 of the Commercial Law Article of the Annotated Code of Maryland.

**If the Dwelling is located in Minnesota:** If the amount of this Loan is $100,000 or more, we elect Minn. Stat. § 334.01

**If the Dwelling is located in Missouri:** Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable. To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.

**If the Dwelling is located in New York:** YOU SHOULD CHECK WITH YOUR LEGAL ADVISOR AND WITH OTHER MORTGAGE LIEN HOLDERS AS TO WHETHER ANY PRIOR LIENS CONTAIN ACCELERATION CLAUSES WHICH WOULD BE ACTIVATED BY A JUNIOR ENCUMBRANCE.

DEFAULT IN THE PAYMENT OF THIS LOAN AGREEMENT MAY RESULT IN THE LOSS OF THE PROPERTY SECURING THE LOAN. UNDER FEDERAL LAW, YOU MAY HAVE THE RIGHT TO CANCEL THIS AGREEMENT. IF YOU HAVE THIS RIGHT, THE CREDITOR IS REQUIRED TO PROVIDE YOU WITH A SEPARATE WRITTEN NOTICE SPECIFYING THE CIRCUMSTANCES AND TIMES UNDER WHICH YOU CAN EXERCISE THIS RIGHT.

**If the Dwelling is located in North Dakota:** THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO OTHER REMEDIES ALLOWED BY LAW.

**If the dwelling is located in Oregon:** NOTICE TO THE BORROWER: Do not sign this loan agreement before you read it. The loan agreement may provide for the payment of a penalty if you wish to repay the loan prior to the date provided for repayment in the loan agreement.

**If the Dwelling is located in Texas:** THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES. THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES

**If the Dwelling is located in Vermont:** NOTICE TO CO-SIGNER: YOUR SIGNATURE ON THIS NOTE MEANS THAT YOU ARE EQUALLY LIABLE FOR REPAYMENT OF THIS LOAN. IF THE BORROWER DOES NOT PAY, THE LENDER HAS A LEGAL RIGHT TO COLLECT FROM YOU.

**COPY RECEIVED.** You agree to be legally bound to all provisions of this Agreement. You acknowledge receipt of a completed copy of the Agreement, including important information below regarding your rights to dispute billing errors ("Your Billing Rights")

| | |
|---|---|
| RICHARD RIVERA JR | X _____ |
| TYPE OR PRINT NAME | SIGNATURE |
| JULIE GONZALES-RIVERA | X _____ |
| TYPE OR PRINT NAME | SIGNATURE |
| | |
| TYPE OR PRINT NAME | X _____ |
| | SIGNATURE |
| | |
| TYPE OR PRINT NAME | X _____ |
| | SIGNATURE |

Address of Dwelling   140 COLLEGE RD WATSONVILLE , California 95076

REDACTED

NHEFRAS (Rev 06/13/2005)

# YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act

**Notify Us In Case of Errors or Questions About your Bill**

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet at the address listed on your bill. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

* Your name and Line number
* The dollar amount of the suspected error
* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

If you have authorized us to pay your bill automatically from your savings or checking account, you can stop payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your Credit Line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within ten days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

**Special Rule for Credit Card Purchases**

If you have a problem with the quality of property or services that you purchased with your Card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right

(a)     You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address. and

(b)     The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services

©2005 National City Corporation

REDACTED

NHBERA6 (Rev 04/13/2005)

# SIGNATURE/NAME AFFIDAVIT

DATE: 7/16/2007

LOAN #:

BORROWER  RICHARD RIVERA JR

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW
(This signature must <u>exactly</u> match signatures on the Note and Mortgage or Deed of Trust )

_Richard Rivera Jr_
(Print or Type Name)                                    Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

_____                    _____
(Print or Type Name)                                    Signature

_____                    _____
(Print or Type Name)                                    Signature

_____                    _____
(Print or Type Name)                                    Signature

_____                    _____
(Print or Type Name)                                    Signature

and that

                                                                    are one

and the same person.

State/Commonwealth of _California_
County/Parish of _Santa Cruz_

Subscribed and sworn (affirmed) before me _Marsha A. Marsano, Notary Public_
this _16th_ day of _July 2007_

MARSHA A. MARSANO
COMM # 1710769
Notary Public-California
County of Santa Cruz
My Comm. Exp. Dec. 31, 2010

Notary Public
State/Commonwealth of _California_
Acting in the County/Parish of _Santa Cruz_

My Commission Expires  _12/31/10_

VMP -304 (0405)                    VMP Mortgage Solutions, Inc (800)521-7291                    5.04

# SIGNATURE/NAME AFFIDAVIT

DATE. 7/16/2007

LOAN #:

BORROWER: JULIE GONZALES-RIVERA

THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW
(This signature must <u>exactly</u> match signatures on the Note and Mortgage or Deed of Trust )

_____          _____
(Print or Type Name)                                    Signature

(If applicable, complete the following.)

I AM ALSO KNOWN AS:

_____          _____
(Print or Type Name)                                    Signature

_____          _____
(Print or Type Name)                                    Signature

_____          _____
(Print or Type Name)                                    Signature

_____          _____
(Print or Type Name)                                    Signature

and that

and the same person.                                                        are one

State/Commonwealth of California
County/Parish of Santa Cruz

Subscribed and sworn (affirmed) before me Marsha A. Marsano, Notary Public
this 17th day of July 2007

_____
Notary Public
State/Commonwealth of California
Acting in the County/Parish of Santa Cruz
My Commission Expires 12/31/10

MARSHA A. MARSANO
COMM. # 1710769
Notary Public-California
County of Santa Cruz
My Comm. Exp. Dec. 31. 2010

VMP -304 (0405)          VMP Mortgage Solutions. Inc  (800)521-7291          5/04

# ALLONGE TO Line of Credit AGREEMENT

PNC ID #: REDACTED

PNC Account #: REDACTED

Allonge to one certain Agreement Dated on or About: 7/16/2007

and executed by:  RICHARD RIVERA and JULIE RIVERA
                             Debtor(s)

With a Credit Line Amount of $    200300.00

Debtor Address:   140 COLLEGE RD,WATSONVILLE,CA 95076

Pay to the order of:
Without Recourse

## PNC Bank N.A., successor by merger to National City Bank

By:  _Eileen M Kovach_

**Eileen M. Kovach**
**Assistant Vice President**

|| |||| || || ||| ||| ||| || ||| || ||| || ||| |||

## ALLONGE TO THE NOTE

**LOAN #:** REDACTED
**Previous Loan #:**
**Borrower:** RICHARD RIVERA JR AND JULIE GONZALES-RIVERA
**Date of Note:** 07/16/2007
**Loan Amount:** $200,300.00
**Property Address:** 140 COLLEGE RD, WATSONVILLE, CA 95076

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: TRINITY FINANCIAL SERVICES, LLC , Without any recourse, representation or warranty, express or implied

### US MORTGAGE RESOLUTION, LLC

Signature: _____

Printed Name: Thomas D. Dunkel

Title: Managing Member

|||||||||||||||||||||||||||||

## ALLONGE TO THE NOTE

**LOAN #:** REDACTED
**Previous Loan #:**
**Borrower:** RICHARD RIVERA JR AND JULIE GONZALES-RIVERA
**Date of Note:** 07/16/2007
**Loan Amount:** $200,300.00
**Property Address:** 140 COLLEGE RD, WATSONVILLE, CA 95076

For value received, I hereby transfer, endorse and assign the within Note and Deed of Trust / Mortgage securing the same, so far as the same pertains to said Note.

Pay to the order of: ASPEN G, LLC , Without any recourse, representation or warranty, express or implied

**TRINITY FINANCIAL SERVICES, LLC**

Signature: _Rhonda Campbell_

Printed Name: Rhonda Campbell

Title: Assistant Vice President

PLEASE COMPLETE THIS INFORMATION

RECORDING REQUESTED BY:

National City Bank

AND WHEN RECORDED MAIL TO:

RETURN TO (NLS)
NATIONS TITLE AGENCY INC.
5370 W. 95th ST.
SHAWNEE MISSION, KS 66207



2007-0040344

| Recorded | REC FEE | 30.__ |
| Official Records | | |
| County of | | |
| Santa Cruz | | |
| GARY E. HAZELTON | | |
| Recorder | | |
| | EE | |
| 11:16AM 24-Jul-2007 | Page 1 of 8 | |

SPACE ABOVE FOR RECORDER'S USE ONLY

Deed of Trust   REDACTED
Title of Document

THIS AREA FOR
RECORDER'S
USE ONLY

THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
($3.00 Additional Recording Fee Applies)

(Rev 6/00:ha)

(Word/S:/Doc Exam/Cover Sheet)

Recording Requested By:

~~Return To~~

NCB, CLS BRECKSVILLE
LOCS, LOCATOR 7120
P.O. BOX 5570
CLEVELAND, OH 44101

Prepared By:
AMANDA CHAPULA,
NATIONAL CITY BANK
1403 Corporate Center Parkway,
Santa Rosa Ca 95407

———————— State of California ———————— Space Above This Line For Recording Data ——— ——

REDACTED

# DEED OF TRUST
(With Future Advance Clause,

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is **July 16, 2007**
   The parties and their addresses are:
   TRUSTOR **RICHARD RIVERA JR** and
   **JULIE GONZALES-RIVERA**
   *Husband & Wife*
   **140 COLLEGE RD WATSONVILLE, California 95076**

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Trustors, their signatures and acknowledgement.

   TRUSTEE: ~~National City Bank~~
   *Integrated Lender Services*

   LENDER: **NATIONAL CITY BANK**

RIVERA
MORTGAGEDEED

REDACTED

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Trustor's performance under this Security Instrument, Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property.
   **SEE EXHIBIT A ATTACHED**

   **TAX ID # 051 171 14**

   The property is located in **Santa Cruz** at

   | | | |
   |---|---|---|
   | **140 COLLEGE RD** | **WATSONVILLE** | , California **95076** |
   | (Address) | (City) | (ZIP Code) |
   | | (County) | |

   Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now or at any time in the future, be part of the real estate described above (all referred to as "Property")

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall not exceed $ **200,300.00** . This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

4. **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows.
   A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt

Case 18-50604   Claim 4-3 Filed 05/29/18 Desc Main Document Page 18 of 29

described below and all their extensions, renewals, modifications or substitutions *(Include items such as borrowers' names, note or contract amounts, interest rates (whether variable), maturity dates, etc.)*

**Maturity Date: 7/16/2037**

B. All future advances from Lender to Trustor or other future obligations of Trustor to Lender under any promissory note, contract or guaranty, or other evidence of debt executed by Trustor in favor of Lender after this Security Instrument if this Security Instrument is specifically referenced on the evidence of other debt. If more than one person signs this Security Instrument, each Trustor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument.

C. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

D. Performance of every obligation in this Security Instrument (including any subsequent instrument amending this Security Instrument) and any instrument now or later evidencing or securing any indebtedness secured by this Security Instrument

In the event that Lender fails to provide any required notice of the right of rescission, Lender waives any subsequent security interest in Trustor's principal dwelling that is created by this Security Instrument.

5. **DEED OF TRUST COVENANTS.** Trustor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Trustor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Trustor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Trustor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Trustor agrees to make all payments when due and to perform or comply with all covenants. Trustor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval

**Claims Against Title.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Trustor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Trustor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Trustor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor shall not commit or allow any waste, impairment, or deterioration of the Property. Trustor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Trustor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Trustor will notify Lender of all demands, proceedings, claims, and actions against Trustor, and of any loss or damage to the Property. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Trustor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Trustor will in no way rely on Lender's inspection.

**Authority to Perform.** If Trustor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Trustor appoints Lender as attorney in fact to sign Trustor's name or pay any amount necessary for performance. Lender's right to perform for Trustor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Trustor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form OCP-REOT-CA 12/1/2005
VMP®-C465(CA) (0512)

Case 18-50604   Doc 42-3 Filed 05/29/18 Entered 07/16/18 13:39:52   Page 19 of 29

**Condemnation.** Trustor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Trustor authorizes Lender to intervene in Trustor's name in any of the above described actions or claims. Trustor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**Insurance.** Trustor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Lender's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Trustor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Trustor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Trustor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Trustor. If the Property is acquired by Lender, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Trustor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Trustor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Trustor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Trustor warrants that Trustor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with power of sale. Trustor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Trustor will be in default if any of the following occur:

**Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

**Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

**Property.** Any action or inaction by the Borrower or Trustor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Trustor fails to maintain required insurance on the Property; (b) Trustor transfers the Property; (c) Trustor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Trustor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Trustor dies; (f) if more than one Trustor, any Trustor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Trustor and subjects Trustor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.

**Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Trustor is in default. In some instances, federal and state law will require Lender to provide Trustor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions.

At the option of the Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. Lender shall be entitled to, without limitation, the power to sell the Property.

If Lender elects to foreclose by exercise of the power of sale, Lender will declare the entire Secured Debts due and payable by delivering to Trustee this Security Instrument and any evidence of the Secured Debts, receipts and evidence of expenditures made and secured, as Trustee requires. When the legally prescribed time passes after Trustee or Lender duly records a notice of default, the Trustee, Lender or other person authorized to take the sale will give a notice of sale as required by law and will

Case 1:18-500504   Doc# 42-3 Filed 05/29/18 Desc Main Doc 16/18/13:39 Page 29 of 29 Page 20 of 29

cause the Property to be sold at the time and place fixed in the notice of sale. Lender may rescind any notice of default at any time before the Property's sale. Rescission will occur when Lender executes and records a notice of rescission that cancels any prior notice of default and any related acceleration of the Secured Debts. Lender's rescission will not waive any default then existing or subsequently occurring or preclude Lender exercising its remedies, including the power of sale, at another time.

The Property can be sold as a whole or in separate parcels and in any order that Trustee decides. The Property will be sold to the highest bidder for cash in lawful money of the United States, payable at sale time. The Property can be sold to anyone, including Trustor, Trustee or Lender. Trustee may postpone the sale of any part of the Property by public announcement at the time and place of this sale and afterwards at the time fixed by the preceding postponement. Upon any sale of the Property, Trustee will make and deliver a special or limited warranty deed that conveys the property sold to the purchaser or purchasers. Under this special or limited warranty deed, Trustee will covenant that Trustee has not caused or allowed a lien or an encumbrance to burden the Property and that Trustee will specially warrant and defend the Property's title to the purchaser or purchasers at the sale against all lawful claims and demand of all persons claiming by, through or under Trustee. The deed's recital of facts will be conclusive proof of the truthfulness of these facts.

The proceeds from the Property's sale will be applied to the sale expenses, Trustee's expenses, Lender's attorneys' fees due on Trustor's default, sums that Trustee or Lender paid for procuring a title search of the Property's title subsequent to the execution of this Security Instrument, all outstanding amounts due under this Security Instrument and the remainder to anyone legally entitled to the remaining amounts due.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Trustor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Trustor breaches any covenant in this Security Instrument, Trustor agrees to pay all expenses Lender incurs in performing such covenants (including but not limited to advances and expenses described in the DEED OF TRUST COVENANTS section) or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the highest rate of interest in effect as provided in the terms of the Secured Debt. Trustor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Trustor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Trustor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.

Trustor represents, warrants and agrees that:
   A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
   B. Except as previously disclosed and acknowledged in writing to Lender, Trustor and every tenant have been are, and shall remain in full compliance with any applicable Environmental Law.
   C. Trustor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Trustor shall take all necessary remedial action in accordance with any Environmental Law.
   D. Trustor shall immediately notify Lender in writing as soon as Trustor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Trustor signs this Security Instrument but does not sign an evidence of debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Trustor and Lender.

© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form OCP-REDT-CA 12/1/2005

VMP®-C465(CA) (0512)

Case 1:18-bk-50604   Doc # 42-3   Filed 05/29/18   Desc Main   Doc 7/16/18 11:39:59   Page 21 of 29

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **SUCCESSOR TRUSTEE.** Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee without any other formality than the designation in writing. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon Trustee by this Security Instrument and applicable law.

16. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Lender and Trustor request that copies of any notice of default or notice of sale under a superior security instrument be sent to Lender and Trustor at the addresses listed in the DATE AND PARTIES section.

17. **WAIVERS.** Except to the extent prohibited by law, Trustor waives all appraisement or marshalling of assets relating to the Property.

18. **SEPARATE PROPERTY.** Any Trustor who is a married person or a registered domestic partner expressly agrees that recourse may be had against his or her separate property.

19. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

20. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

21. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
    ☐ Assignment of Leases and Rents  ☐ Other _____

22. ☐ **ADDITIONAL TERMS.**

23. **REQUEST FOR NOTICE.** In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded _____ .
_____, in book _____ . page _____ , records of _____ County, (or filed for record with recorder's serial number _____ County) California, executed by _____

_____ as trustor (or mortgagor) in which _____ , is named as beneficiary (or mortgagee) and _____ as trustee be mailed to _____

Name _____ at _____
Address _____
NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.
*(Include the requester's name, by the signer, among those acknowledging below, or use a separate acknowledgment form.)*

Signature on behalf of the requester named above

Signature _____

© 1994 Wolters Kluwer Financial Services · Bankers Systems™ Form OCP-REDT-CA 12/1/2005
VMP®·C465(CA) (0512)

*(page 5 of 6)*

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Trustor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

(Signature)    **RICHARD RIVERA JR**      (Date)     (Signature)   **JULIE GONZALES-RIVERA**     (Date)

**ACKNOWLEDGMENT:**
STATE OF    California
COUNTY OF   Santa Cruz        } ss.
On this    17th   day of   July    2007     before me Marsha A. Marsano
a notary public, personally appeared
Richard Rivera Jr - Julie Gonzales- Rivera , husband + wife

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature
Name (typed or printed)   Marsha A. Marsano

(Seal)

My commission expires   12/31/10

MARSHA A. MARSANO
COMM # 1710769
Notary Public-California
County of Santa Cruz
My Comm. Exp. Dec. 31, 2010

---

**REQUEST FOR FULL RECONVEYANCE**
To Trustee: The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of the Recorder of _____ County, State of California in book _____ , page _____ of official records. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.
Dated: _____

Assessor's Identification Number

© 1994 Wolters Kluwer Financial Services - Bankers Systems™ Form OCP-REDT-CA 12/1/2005
VMP-®-C465(CA) (0512)

*(page 6 of 6)*

## LEGAL DESCRIPTION
### (Exhibit A)

REDACTED

THE FOLLOWING DESCRIBED REAL PROPERTY SITUATE IN THE CITY OF WATSONVILLE, COUNTY OF SANTA CRUZ, STATE OF CALIFORNIA AND DESCRIBED AS FOLLOWS:

BEING A PART OF THE LANDS CONVEYED BY JAMES B. CUTTER, ET UX., TO KENNETH GREGORY, ET UX., BY DEED RECORDED DECEMBER 5, 1938 IN VOLUME 358, PAGE 317, OFFICIAL RECORDS OF SANTA CRUZ COUNTY AND BEGINNING AT A 3/4 INCH PIPE SET ON THE SOUTHWESTERN SIDE OF A COUNTY ROAD 40 FEET IN WIDTH AND KNOWN AS COLLEGE ROAD, FROM WHICH THE MOST NORTHERN CORNER ON THE CENTERLINE OF SAID COLLEGE ROAD OF SAID LANDS CONVEYED BY CUTTER TO GREGORY, AS AFORESAID BEARS NORTH 62 DEG 20 MIN WEST 60.00 FEET TO A 1 INCH PIPE; AND NORTH 18 DEG 25 MIN EAST, AT 8.96 FEET TO A 1 1/4 INCH STEEL BAR; 20.26 FEET DISTANT TO AN 8 INCH SPIKE SET AT SAID MOST NORTHERN CORNER; RUNNING THENCE FROM SAID POINT OF BEGINNING ALONG THE SOUTHWESTERN SIDE OF SAID COLLEGE ROAD SOUTH 62 DEG 20 MIN EAST 60.00 FEET TO A 3/4 INCH PIPE; THENCE LEAVING SAID ROAD SOUTH 25 DEG 12 MIN WEST 106.11 FEET TO A POINT; SOUTH 25 DEG 12 MIN WEST 6 FEET FROM A 1 INCH PIPE; THENCE NORTH 62 DEG 20 MIN WEST 53.64 FEET TO A POINT SOUTH 21 DEG 47 MIN WEST 6.03 FEET FROM A 1 INCH PIPE; THENCE NORTH 21 DEG 47 MIN EAST 106.55 FEET TO THE PLACE OF BEGINNING.

BEING THE SAME PREMISES AS CONVEYED IN DEED FROM RICHARD RIVERA JR AND JULIE GONZALES-RIVERA, HUSBAND AND WIFE, AS JOINT TENANTS RECORDED 2005-06-14 IN SAID COUNTY AND STATE.

Tax Id: 051-171-14

MORTGAGEDEED_A

REDACTED

**Prepared By**: Janice Smith
PNC Bank National Association, successor by merger to National City Bank
6750 Miller Road,
Brecksville, OH 44141

**WHEN RECORDED RETURN TO:**
Richmond Monroe Group
PO BOX 458
Kimberling City, MO 65686

REDACTED



2015-0019767 05/21/2015 09:00:07 AM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE    $18 00
COUNTY TAX    $0 00
CITY TAX    $0 00
ADTR
1 PG
RCD132



## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, **PNC Bank National Association, successor by merger to National City Bank, 6750 Miller Road Brecksville, OH 44141** ("Assignor") hereby assigns and transfers to <u>US Mortgage Resolution LLC, WHOSE ADDRESS IS: 2701 Renaissance Blvd, 4th Fl, King of Prussia, PA 19406</u> ("Assignee"), without recourse, representation, warranty or guaranty, express or implied, of any kind or nature, all of Assignor's rights, title and interest in and to that certain Mortgage or Deed of Trust:

Executed by: **Richard Rivera Jr and Julie Gonzales-Rivera, Husband and Wife**
Recorded on: **7/24/2007**          Mortgage Amount: **$ 200300.00**
In the Recorder's Office of: **Santa Cruz, California**
Instrument #: **2007-0040344**    Book: **N/A**        Page(s): **N/A**
Property Address: **140 College Rd, Watsonville, CA 95076**

**Date:** 3/19/2015
**PNC Bank National Association, successor by merger to National City Bank**

Signature: _____
Stephanie Kibler, Assistant Vice President

### ACKNOWLEDGMENT

STATE OF OHIO                          )
                                       ) SS:
COUNTY OF CUYAHOGA                      )

On the **19th** day of **March** in the year **2015**, before me, the Undersigned, a Notary Public for the said County and State, personally appeared **Stephanie Kibler** respectively of **PNC Bank National Association, successor by merger to National City Bank**. Personally known to me or proved to me on the basis of satisfactory evidence to be the Individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that they are **Assistant Vice President** that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Notary: **Angela M. Subin**
My Commission Expires: **Sept 21, 2019**



REDACTED

Recording Requested By:

RICHMOND MONROE GROUP, INC

When Recorded Return To:

RICHMOND MONROE GROUP
PO BOX 458
KIMBERLING CITY, MO 65686

*Regan G., LLC*

RCD132

ADTR
1 PC

RECORDING FEE      $18.00
COUNTY TAX         $0.00
CITY TAX           $0.00

OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder

2015-0019783  05/21/2015  09:10:11 AM

Santa Cruz, California   REFERENCE [REDACTED]
*RIVERA JR.*

## CORPORATE ASSIGNMENT OF DEED OF TRUST

INVESTOR #:

For Value Received, US MORTGAGE RESOLUTION, LLC at 150 S. WARNER ROAD, SUITE 220, KING OF
PRUSSIA, PA 19406 hereby grants, assigns and transfers to TRINITY FINANCIAL SERVICES LLC. at 2618 SAN
MIGUEL DR, SUITE 303, NEWPORT BEACH, CA 92660 all beneficial interest under that certain Deed of Trust
dated 07/16/2007 , in the amount of $200,300.00, executed by RICHARD RIVERA JR AND JULIE
GONZALEZ-RIVERA HUSBAND & WIFE to NATIONAL CITY BANK, and Recorded: 07/24/2007 as Instrument No.
2007-0040344 in Santa Cruz County , State of California and all rights accrued or to accrue under said Deed of
Trust.

In witness whereof this instrument is executed

On 4/21

US MORTGAGE RESOLUTION, LLC

_____
Thomas D. Dunkel, Managing Member

STATE OF PENNSYLVANIA
COUNTY OF MONTGOMERY

On 04/21/2015 , before me, Trevor DeHaas, a Notary Public in and for MONTGOMERY in the State of
PENNSYLVANIA, personally appeared Thomas D. Dunkel, Managing Member, personally known to me (or proved to
me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and
that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal.

_____
Trevor DeHaas
Notary Expires: 9/23/2017
(This area for notarial seal)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
TREVOR DEHAAS
Notary Public
UPPER MERION TWP., MONTGOMERY COUNTY
My Commission Expires Sep 23, 2017

Recording Requested By:
RICHMOND MONROE GROUP, INC

When Recorded Return To:
*Tara*
RICHMOND MONROE GROUP
PO BOX 458
KIMBERLING CITY, MO 65686
REDACTED



2015-0019761 05/21/2015 08:56:18 AM
OFFICIAL RECORDS OF Santa Cruz County
Sean Saldavia Recorder
RECORDING FEE: $18.00
COUNTY TAX: $0.00
CITY TAX: $0.00
ADTR
1 PG
RCD132



## CORPORATE ASSIGNMENT OF DEED OF TRUST

Santa Cruz, California   REFERENCE #REDACTED   "RIVERA"
INVESTOR #:

For Value Received, TRINITY FINANCIAL SERVICES, LLC at 2618 SAN MIGUEL DR., SUITE 303, NEWPORT BEACH, CA 92660 hereby grants, assigns and transfers to ASPEN G, LLC at 705-B SE MELODY LN #306, LEE'S SUMMIT, MO 64063 all beneficial interest under that certain Deed of Trust dated 07/16/2007 , in the amount of $200,300.00, executed by RICHARD RIVERA JR AND JULIE GONZALES-RIVERA HUSBAND AND WIFE to NATIONAL CITY BANK and Recorded: 07/24/2007 in Book/Reel/Liber: N/A Page/Folio: N/A as Instrument No.: 2007-0040344 in Santa Cruz County , State of California and all rights accrued or to accrue under said Deed of Trust.

In witness whereof this instrument is executed.

TRINITY FINANCIAL SERVICES, LLC
On January 16th, 2015

Rhonda Campbell, Assistant Vice President

STATE OF MISSOURI
COUNTY OF STONE

On January 16th, 2015, before me, PAIGE MARTIN, a Notary Public in and for STONE in the State of MISSOURI, personally appeared Rhonda Campbell, Assistant Vice President, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

PAIGE MARTIN
Notary Expires: 03/31/2018 #14599614
(This area for notarial seal)

PAIGE MARTIN
My Commission Expires
March 31, 2018
Stone County
Commission #14599614

REDACTED

Michelle R. Ghidotti-Gonsalves, Esq. (SBN 232837)
Kristin A. Zilberstein (SBN 200041)
Jennifer R. Bergh, Esq. (SBN 305219)
LAW OFFICES OF MICHELLE GHIDOTTI
1920 Old Tustin Ave.
Santa Ana, CA 92705
Ph: (949) 427-2010
Fax: (949) 427-2732
mghidotti@ghidottilaw.com

Attorney for Creditor
Aspen G LLC

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA – SAN JOSE DIVISION

| | |
|---|---|
| In Re: | ) CASE NO.: 18-50604 |
| | ) |
| Richard John Rivera, Jr., | ) CHAPTER 13 |
| | ) |
| Debtors. | ) **CERTIFICATE OF SERVICE** |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

## <u>CERTIFICATE OF SERVICE</u>

I am employed in the County of Orange, State of California.  I am over the age of eighteen and not a party to the within action.  My business address is: 1920 Old Tustin Ave., Santa Ana, CA 92705.

I am readily familiar with the business's practice for collection and processing of correspondence for mailing with the United States Postal Service; such correspondence would be deposited with the United States Postal Service the same day of deposit in the ordinary course of business.

1

On May 29, 2018 I served the following documents described as:

- **PROOF OF CLAIM**

on the interested parties in this action by placing a true and correct copy thereof in a sealed

envelope addressed as follows:

(Via United States Mail)

| **Debtor**<br>Richard John Rivera, Jr.<br>140 College Rd.<br>Watsonville, CA 95076<br><br>**Joint Debtor**<br>Julie Gonzales-Rivera<br>140 College Rd.<br>Watsonville, CA 95076<br><br>**Debtor's Counsel**<br>Paul Seabrook<br>Seabrook Law Offices<br>2055 Junction Ave. #138<br>San Jose, CA 95131 | **Chapter 13 Trustee**<br>Devin Derham-Burk<br>P.O. Box 50013<br>San Jose, CA 95150-0013<br><br>**U.S. Trustee**<br>Office of the U.S. Trustee / SJ<br>U.S. Federal Bldg.<br>280 S 1st St. #268<br>San Jose, CA 95113-3004 |

_xx____(By First Class Mail) At my business address, I placed such envelope for deposit with the United States Postal Service by placing them for collection and mailing on that date following ordinary business practices.

_____Via Electronic Mail pursuant to the requirements of the Local Bankruptcy Rules of the Eastern District of California

__xx_ (Federal) I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 29, 2018 at Santa Ana, California

_/s / Jeremy Romero_
Jeremy Romero

2